

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-5-1994

# St. Francis Medical Center v. Shalala, et al.

Precedential or Non-Precedential:

Docket 93-3405

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"St. Francis Medical Center v. Shalala, et al." (1994). *1994 Decisions.* Paper 104.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/104

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 93-3405
_____

ST. FRANCIS MEDICAL CENTER,
Appellant

v.

DONNA E. SHALALA, Secretary of the
Department of Health and Human Services,
BRUCE C. VLADECK, Administrator,
Health Care Financing Administration; and
JACK MARTIN, Chairman, Provider
Reimbursement Review Board
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
_____

(D.C. Civil No. 89-02452)

Argued:  March 2, 1994
Before:  SLOVITER, Chief Judge, ALITO, Circuit Judge,
and PARELL, District Judge*

(Opinion Filed:  August 9, 1994)

STEPHEN P. NASH, ESQ.
MELINDA J. ROBERTS, ESQ. (ARGUED)
DAVID W. THOMAS, ESQ.
JACQUELINE O. SHOGAN, ESQ.
Nash and Company
700 Westinghouse Building
Pittsburgh, PA 15222

Attorneys for Appellant

* The Honorable Mary Little Parell, United States District Court
Judge for the District of New Jersey, sitting by designation.

FRANK W. HUNGER
Assistant Attorney General
Civil Division
THOMAS W. CORBETT, JR.
United States Attorney
PAUL J. BRYSH
Office of United States Attorney
633 United States Post Office
 and Courthouse Building
Pittsburgh, PA 15219

BARBARA H. FISHER
Department of Health & Human Services
6325 Security Boulevard
500 East High Rise Building
Baltimore, MD 21207

GERARD KEATING (ARGUED)
Department of Health & Human Services
Health Care Financing Division
330 Independence Avenue, S.W.
Washington, D.C. 20201

Attorneys for Appellees

---

OPINION OF THE COURT

---

ALITO, Circuit Judge:

St. Francis Medical Center (SFMC) is a provider of health care services covered under Part A of Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et. seq., which is commonly known as the Medicare Act. SFMC appeals from a district court order dismissing its amended complaint for lack of jurisdiction under 28 U.S.C. § 1331. We affirm.

I.

A.  Before 1982, Medicare providers were reimbursed for the "reasonable cost" of covered services.  See Sacred Heart Medical Ctr. v. Sullivan, 958 F.2d 537, 540 (3d Cir. 1992).  "Under this regime, hospitals and other health care providers had little incentive to curb operating costs and render services more economically, for the federal government bore the financial burden of increases."  Id. (footnote omitted).  "In 1982, Congress determined that the Medicare Program should be modified to provide hospitals with better incentives to render services more economically.  Accordingly, in the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) Congress amended the [Social Security Act] by imposing a ceiling on the rate of increase of inpatient operating costs recoverable by a hospital."  Id. (footnote omitted).

> "Under TEFRA, a hospital may receive no more than the `target amount' of per patient costs."  St. Francis Medical Ctr. v. Sullivan, 962 F.2d 1110, 1111 (3d Cir. 1992) (St. Francis I).     The statute provided: "`target amount' means with respect to a hospital for a particular 12-month cost reporting period -- (i) in the case of the first reporting period for which this subsection is in effect, the allowable operating costs of inpatient hospital services . . . recognized . . . for such hospital for the preceding 12-month cost reporting period."  [42 U.S.C. §] 1395ww(b)(3)(A).  For

each reporting period subsequent to the initial period, the target amount was increased by a specified percentage. Section 1395ww(b)(3)(A). Under this system, hospitals were obligated to absorb operating costs in excess of their target amounts, but they received bonuses if their operating costs were less than their targeted amounts. Section 1395ww(b)(1)(A).

Sacred Heart Medical Ctr., 958 F.2d at 540.

TEFRA also directed the Secretary to provide for exemptions from, and exceptions or adjustments to, the TEFRA limits (see 42 U.S.C. § 1395ww(b)(3)(A)), and the Secretary has done so. Before 1991, 42 C.F.R. § 413.40(g) (1990), which bore the heading "Exceptions," permitted the Health Care Financing Administration (HCFA)[1] to "adjust a hospital's operating costs . . . upward or downward" if the hospital could "show that it incurred unusual costs (in either a cost reporting period subject to the ceiling or the hospital's base period) due to extraordinary circumstances beyond its control" (42 C.F.R. § 413.40(g)(2) (1990)) or if the hospital had experienced a change in its "case mix" (42 C.F.R. § 413.40(g)(3) (1990)). In addition, 42 C.F.R. § 413.40(h), which bore the heading "Adjustments," provided in pertinent part:

---

[1]. The Secretary has delegated considerable administrative responsibility for the Medicare Program to the HCFA. See Sacred Heart Medical Ctr., 958 F.2d at 540 n.4.

HCFA may adjust the amount of the operating costs considered in establishing cost per case for one or more cost reporting periods, including both periods subject to the ceiling and the hospital's base period, to take into account factors that could result in a significant distortion in the operating costs of inpatient hospital services.

42 C.F.R. § 413.40(h)(1) (1990).

In 1991, these provisions were combined to form what is now 42 C.F.R. § 413.40(g) (1993). Under this provision, the HCFA "may adjust the amount of the operating costs considered in establishing the rate-of-increase ceiling for one or more cost reporting periods, including both periods subject to the ceiling and the hospital's base period, under the circumstances specified below." Subsequent provisions state that such adjustments may be granted for essentially the same reasons listed in the previous version of the regulations. See 42 C.F.R. § 413.40(g)(2)-(3) (1993).[2]

_____

[2]. These provisions state:

> (2) Extraordinary circumstances. HCFA may make an adjustment to take into account unusual costs (in either a cost reporting period subject to the ceiling or the hospital's base period) due to extraordinary circumstances beyond the hospital's control. These circumstances include, but are not limited to, strikes, fire, earthquakes, floods, or similar unusual occurrences with substantial cost effects.

> (3) Comparability of cost reporting periods -- (i) Adjustment for distortion. HCFA may make an adjustment to take into account factors that would result in a significant distortion in the operating costs of inpatient hospital services between the base year and the cost reporting period subject to the limits.

The Secretary now interprets 42 C.F.R. § 413.40(g) (1993) to mean that a provider may obtain two different types of "base period inpatient operating cost adjustments." Appellees' Br. at 7. According to the Secretary, the first type is "cost year-specific" and may raise a provider's target amount for the purpose of recovering that year's costs but not for the purpose of calculating bonus payments. Id. at 7-9. The second type of adjustment, the Secretary explains, results in "a permanent adjustment to the base period inpatient operating costs used to calculate the TEFRA limit," and "any permanent increase in the limit would come into play under the TEFRA bonus provision beginning only with the fiscal year after the one for which any permanent base period relief [is] granted." Id. at 8-9. SFMC argues vigorously that the Secretary's recognition of this second type of adjustment represents a recent change in position that was taken for purposes of litigation.

In 1983, Congress largely replaced the TEFRA system with a "prospective payment system" (PPS) (see Sacred Heart Medical Ctr., 958 F.2d at 540), but certain types of hospitals and hospital units were excluded from the PPS. See 42 U.S.C. § 1395ww(b), and (d)(1)(A)-(B); 42 C.F.R. §§ 412.20(b), 412.22(b). Among the excluded units were distinct part rehabilitation units. See 42 U.S.C. § 1395ww(d)(1)(B); 42 C.F.R. §§ 412.23, 412.30.

B. SFMC operates a general acute-care hospital that includes a rehabilitation unit. For TEFRA purposes, the

hospital's base period ended on June 30, 1985.  During this period, SFMC's fiscal intermediary concluded that SFMC did not have a distinct part rehabilitation unit under the applicable regulations "since less than 75% of its patients required intensive rehabilitation.  The intermediary terminated the provider as a distinct part rehabilitation unit and the Health Care Financ[ing] Administration . . . upheld that decision.  To comply with the 75% rule, the Medical Center transferred some of its `non-qualifying' patients from the rehabilitation unit to its acute care facility.  This transfer was completed in the year ending July 30, 1986 . . . ."  St. Francis I, 962 F.2d at 1112. Because this transfer was not completed until after the base period ended, SFMC maintains,

> certain "non-qualifying" patients were included on the original 1985 cost report for the Medical Center's rehabilitation unit, but then were transferred out of that unit by 1986.  The absence of these "non-qualifying" patients from the group of patients treated by the unit in 1986 meant that the Medical Center's average patient costs were higher in 1986 than the estimates of those costs derived from the 1985 base year cost report.  In addition, the base year cost report did not include costs associated with a physical expansion project completed in 1986.

Id. at 1113.

SFMC sought relief under 42 C.F.R. § 413.40(g) and (h) for the cost reporting period ending June 30, 1986.  Although the intermediary recommended partial relief, the HCFA denied SFMC's requests.  The HCFA concluded that SFMC's transfer of nonqualifying patients out of the rehabilitation unit after the

base period did not constitute "an extraordinary circumstance beyond the hospital's control" but resulted from a "management decision" to claim the transferred patients as rehabilitation cases in the base year. App. at 24-25. The HCFA also concluded that an adjustment was not warranted by the hospital's building program. Id. at 24-25. The HCFA noted that expansion is usually undertaken to accommodate "increased utilization," which in turn tends to "offset any impact on a target rate." Id. at 24. However, in SFMC's case, the HCFA observed, "while an expansion program was being implemented, the size of the rehabilitation unit was being decreased." Id.

SFMC appealed to the Provider Reimbursement Review Board (PRRB), but the PRRB held that it lacked jurisdiction to hear the appeal because, among other things, SFMC had not satisfied the $10,000 amount-in-controversy requirement in 42 U.S.C. § 1395oo(f). The PRRB wrote:

> Under Section 1878(a) Title XVIII, Social Security Act, as amended, [42 U.S.C. § 1395oo(a)], and 42 C.F.R. 405.1835 and 1841, a provider has a right to a hearing before the Board with respect to costs claimed on a timely filed cost report if it is dissatisfied with the final determination of the intermediary . . . , and the amount in controversy is $10,000, or more, and the request for hearing was filed within 180 days of the date of the final determination . . . . [T]he amount in controversy for the issues you wish to raise is less than $10,000. Since the above statutory requirement is a prerequisite to a provider's right to a hearing, the Board finds that it does not have jurisdiction over this appeal and hereby dismisses the appeal of the subject year.

App. at 32.[3]

SFMC then filed this action in district court. Asserting that the district court had jurisdiction under 42 U.S.C. § 1395oo(f), SFMC's complaint alleged that the PRRB had "wrongfully declined jurisdiction" and that the fiscal intermediary and the HCFA had erred in denying SFMC's requests "to amend and/or reopen its 1985 cost report." App. at 62. The complaint sought a declaration that the intermediary, the HCFA, and the PRRB had acted improperly. Id. In addition, the complaint requested that the court order that SFMC be given permission to amend its 1985 cost report; that the intermediary, the HCFA, and the PRRB "recalculate [SFMC's] base year cost per discharge in accordance with its amended cost report"; and that SFMC be awarded "the sums due it pursuant to the amended cost

_____

[3]. While the PRRB denied jurisdiction over SFMC's claims for fiscal year 1985, it exercised jurisdiction over SFMC's claims for fiscal year 1986. These claims were settled, and SFMC was granted reimbursement for its full inpatient operating costs for fiscal years 1986 through 1988. App. at 36, 46-50; Appellant's Br. at 12. This reimbursement totalled $1,117,355. App. at 37-38. With respect to bonus payments, the settlement stated:

> The Provider agrees that no exception awarded under 42 C.F.R. 413.40(g) by virtue of this settlement or any HCFA decision related to the capital expansion program shall entitle the Provider to any TEFRA incentive payments or other payments in excess of final audited costs. The parties make no agreement with respect to the appropriateness of any TEFRA incentive payments or other payments in excess of final audited costs should an adjustment be awarded under 42 C.F.R. 413.40(h).

Id. at 39-40. SFMC subsequently dismissed its 1986 PRRB appeal. Id. at 259.

report, together with interest thereon" and attorney's fees.  Id.
at 62-63.

The Secretary moved to dismiss the case for lack of
jurisdiction, contending that SFMC had not met the $10,000
amount-in-controversy requirement in 42 U.S.C. §1305oo(f).  The
magistrate judge to whom the case had been referred rejected this
argument and therefore recommended that this motion be denied and
that the case be remanded to the PRRB.  The magistrate judge did
not find that SFMC was seeking to recover $10,000 or more for the
cost reporting period at issue, i.e., the period ending on June
30, 1986.  Instead, the magistrate judge concluded:

> The PRRB attempts to isolate each year involved to
> determine whether it meets the $10,000.00 requirement,
> but the claim requires the board to look at the years
> 1985 through 1988 as a whole because they are
> inextricably connected, since the base year is the
> foundation for a continuing inaccuracy in plaintiff's
> reimbursements from Medicare.  Plaintiff easily meets
> the $10,000.00 jurisdictional amount as defined in 42
> C.F.R. Section 405.1839(a)(2) for the years 1986, 1987
> and 1988, for which the TEFRA rate of increase limits
> are determined by the 1985 cost report.  It is
> unreasonable and inefficient to require plaintiff to
> file annually for an exception to the TEFRA limits when
> a recalculation of the base year cost report, if proven
> to be inaccurate, would obviate the problem.

App. at 71-72.  The district court accepted the magistrate
judge's recommendation.

On appeal, a divided panel of our court reversed and
held that SFMC had not satisfied the $10,000 amount-in-
controversy requirement.  Noting that "[t]he `amount in
controversy' is defined by [42 U.S.C. § 1395oo(a)(1)(A)(i)] as

`the amount of total program reimbursement due to the provider for the items and services furnished to individuals for which payment may be made . . . for the period covered by such report,'" the panel held that a single provider may not "aggregate claims over several cost reports in order to satisfy the amount in controversy requirement of § 1395oo(a)." St. Francis I, 962 F.2d at 1114, 1115 (emphasis supplied in St. Francis I). However, in response to SFMC's argument that the district court had jurisdiction under 28 U.S.C. § 1331, the panel remanded the case to the district court so that SFMC could petition for leave to amend its complaint to assert jurisdiction under that provision. 962 F.2d at 1117. In doing so, however, the panel made clear that it was not deciding whether SFMC's claims could "properly be asserted under this jurisdictional provision." Id. at 1117 n.10.

On remand, SFMC was granted leave to file an amended two-count complaint that asserted jurisdiction under 28 U.S.C. § 1331. Count I of the amended complaint alleged:

> The methodology, or lack of methodology, utilized by HCFA to deny to St. Francis Medical Center a base year adjustment (to achieve comparability between cost reporting periods) has resulted in HCFA's imposition of improper and unreasonable reimbursement ceilings (TEFRA Ceilings) upon the Medical Center's rehabilitation unit.

App. at 212. Count II alleged that SFMC's equal protection rights had been violated because it had been treated differently from providers "whose post-base year costs for post-base year

cost reporting periods . . . are undistorted."  Id. at 213.
Counts I and II of the amended complaint sought essentially the
same relief as SFMC's prior complaint.  Id. at 213–15.

The defendants moved to dismiss, and the magistrate
judge recommended that the motion be granted on the ground that
42 U.S.C. § 405(h) precluded the exercise of jurisdiction under
28 U.S.C. § 1331.  The district court agreed and dismissed the
amended complaint.  This appeal followed.

II.

Under the Medicare Act, 42 U.S.C. § 1395oo(f)(1), a
provider has "the right to obtain judicial review of any final
decision" of the PRRB by means of a civil action filed in
district court.  In St. Francis I, however, our court held that
SFMC could not obtain judicial review under this provision
because it had not satisfied the $10,000 amount-in-controversy
requirement of 42 U.S.C. § 1395oo(a).  SFMC thus turned to 28
U.S.C. § 1331 as an alternative avenue for obtaining review, but
SFMC's reliance on this provision raises other jurisdictional
problems.

The Medicare Act, 42 U.S.C. § 1395ii, incorporates 42
U.S.C. § 405(b), which provides in relevant part:

> The findings and decision of the Secretary after a
> hearing shall be binding upon all individuals who were
> parties to such hearing.  No findings of fact or
> decision of the Secretary shall be reviewed by any
> person, tribunal, or governmental agency except as
> herein provided.  No action against the United States,
> the Secretary, or any officer or employee thereof shall

> be brought under section 1331 or 1346 of Title 28 to
> recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (emphasis added).  Therefore, if SFMC's
amended complaint seeks "to recover on [a] claim arising under
[the Medicare Act]," this provision deprives the district court
of jurisdiction under 28 U.S.C. § 1331.

As the District of Columbia Circuit has noted,
resolution of this jurisdictional issue requires us to consider
two lines of Supreme Court precedent:  the "Salfi-Ringer line"
and the "Erika-Michigan Academy line."  See National Kidney
Patients Ass'n v. Sullivan, 958 F.2d 1127, 1130 (D.C. Cir. 1992),
cert. denied, 113 S. Ct. 966 (1993).  We will consider each of
these lines separately.

A.  If the "Salfi-Ringer line" controls, the decision
of the district court dismissing SFMC's complaint was clearly
correct.  In Weinberger v. Salfi, 422 U.S. 749 (1975), the Court
considered an action brought on behalf of a class of persons who
had been denied Social Security benefits pursuant to a provision
of the Social Security Act that permitted a widow or stepchild to
obtain benefits only if that claimant had become the wife or
stepchild of the deceased at least nine months before his death.
A three-judge court held that this statutory requirement was
unconstitutional, but the Supreme Court concluded that 42 U.S.C.
§ 405(h) deprived the lower court of jurisdiction to entertain
the suit under 28 U.S.C. § 1331.  The Court rejected the
proposition that section 405(h) merely requires exhaustion of

administrative remedies (422 U.S. at 757), as well as the argument that the plaintiffs' claims arose under the Constitution rather than the Social Security Act.  Id. at 760.  The Court wrote:

> It would, of course, be fruitless to contend that appellees' claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint.  But it is just as fruitless to argue that this action does not also arise under the Social Security Act.  For not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions.  Appellees sought, and the District Court granted, a judgment directing the Secretary to pay Social Security benefits.  To contend that such an action does not arise under the Act whose benefits are sought is to ignore both the language and the substance of the complaint and judgment.  This being so, the third sentence of § 405(h) precludes resort to federal-question jurisdiction for the adjudication of appellees' constitutional contentions.

Id. at 760-61.  The Court thus held that individuals wishing to challenge the duration-of-relationship requirement were required to proceed under 42 U.S.C. § 405(g) rather than under 28 U.S.C. § 1331.  See 422 U.S. at 763-67.

In Heckler v. Ringer, 466 U.S. 602 (1984), the plaintiffs were individuals who wanted Medicare to pay Part A benefits[4] for a surgical procedure known as bilateral carotid

---

[4].  As we recently explained:

> Medicare coverage is primarily divided into two parts.  Part A covers all inpatient hospital expenses through an insurance plan.  See 42 U.S.C. §§ 1395c to

body resection (BCBR). The Secretary through the HCFA adopted a policy that "no payment [was] to be made for Medicare claims arising out of the BCBR surgical procedure when performed to relieve respiratory distress." Id. at 607; see also id. at 608. Asserting jurisdiction based in part on 28 U.S.C. § 1331, the plaintiffs filed suit, contending that the Secretary's policy violated "constitutional due process and numerous statutory provisions." 466 U.S. at 610. The Supreme Court held, however, that jurisdiction under 28 U.S.C. § 1331 was not available, and the Court specifically rejected the distinction that the court of appeals had drawn between substantive and procedural claims. 466 U.S. at 614-15. "[T]o be true to the language of the statute,"

(..continued)
1395i-4. All Medicare-eligible patients receive this benefit. . . .

Part B covers certain physician services, hospital outpatient services, and other health services not covered under Part A. See 42 U.S.C. §§ 1395j to 1395w-4(j). Part B coverage is not freely or automatically available to all Medicare-eligible patients. To obtain this coverage, Medicare-eligible patients must first enroll in the Part B insurance program by paying insurance premiums ("Part B insurance premiums"). See §§ 1395o-1395s. Once this is done, the federal government pays 80% of the "reasonable costs" of outpatient hospital services and 80% of the "reasonable charges" for physician services rendered to the insured. §1305l. The Part B patients themselves must pay the remaining 20% of the charges for the reasonable outpatient hospital services and physician services (co-payments or coinsurance), as well as an annual deductible. Id.; § 1395cc(a)(2)(A).

Pennsylvania Medical Soc'y v. Snider, No. 93-7775 (3d Cir. July 22, 1994), slip op. at 4.

the Court wrote, "the inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim `arises under' the Act, not whether it lends itself to a `substantive' rather than a `procedural' label."  466 U.S. at 615.

Turning to the case at hand, the Court concluded that the plaintiffs' "challenge to the Secretary's BCBR payment policy `[arose] under' the Medicare Act."  Id. at 615 (brackets added). The Court found it inconsequential that the plaintiffs "sought only declaratory and injunctive relief and not an actual award of benefits as well" because "[f]ollowing the declaration which respondents seek from the Secretary -- that BCBR surgery is a covered service -- only essentially ministerial details will remain before respondents would receive reimbursement."  Id. Instead of invoking 28 U.S.C. § 1331 or the mandamus statute, the Court held, claimants wishing to challenge the Secretary's BCBR policy were required to proceed under 42 U.S.C. § 405(g).  466 U.S. at 617.

If Salfi and Ringer are controlling in this case, there can be little doubt that the district court lacked general federal-question jurisdiction.  The Medicare Act provides "both the standing and substantive basis" for SFMC's claims.  Salfi, 422 U.S. at 761.  Moreover, SFMC "sought . . . a judgment directing the Secretary to pay [Medicare] benefits."  Id.

Accordingly, under these precedents, SFMC's claim "arises under" the Medicare Act for purposes of section 405(h). See Ringer, 466 U.S. at 615; Salfi, 422 U.S. at 760-61; In re Univ. Medical Ctr., 973 F.2d 1065, 1073 (3d Cir. 1992); Abington Memorial Hosp. v. Heckler, 750 F.2d 242, 244 (3d Cir. 1984), cert. denied, 474 U.S. 863 (1985). Under these precedents, it makes no difference that SFMC asserted constitutional and procedural claims. See Ringer, 466 U.S. at 615; Salfi, 422 U.S. at 761.

B.    SFMC makes little attempt to distinguish Salfi or Ringer. Instead, SFMC relies on the Supreme Court's later decision in Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667 (1986), which concerned a regulation governing payments under Part B of the Medicare program. This regulation permitted carriers to establish separate prevailing charges for specialists and nonspecialists performing the same services. An association of physicians and several individual doctors challenged the regulation on constitutional and statutory grounds, but the Secretary contended that "Congress ha[d] forbidden judicial review of all questions affecting the amount of benefits payable under Part B of the Medicare program." Id. at 669. In making this argument, the Secretary relied on United States v. Erika, Inc., 456 U.S. 201 (1982), in which the Court had held that the Medicare Act precluded any judicial review of a carrier's decision concerning the amount awarded on a Part B claim. The

Secretary also argued that 42 U.S.C. § 405(h) bolstered this conclusion.

The Supreme Court, however, disagreed.  Beginning with "the strong presumption that Congress intends judicial review of administrative action" (476 U.S. at 670), the Court held that neither the Medicare Act nor 42 U.S.C. § 405(h) demonstrated with the requisite clarity that Congress intended to preclude all judicial review of "any action taken under Part B of the Medicare program."  476 U.S. at 673.  The Court held that the portion of the Medicare Act governing review of Part B determinations, as interpreted in Erika, "simply does not speak to challenges mounted against the method by which such amounts are to be determined rather than the determinations themselves."  Id. at 675 (emphasis in original).  The Court then concluded that, whereas a carrier's decision concerning the amount of a Part B claim was not subject to any form of judicial review, those Part B matters that a carrier cannot decide -- "including challenges to the validity of the Secretary's instructions and regulations" -- are not insulated from review under the Medicare Act.  Id. at 678.

As for 42 U.S.C. § 405(h), the Court wrote that it would not "indulge the Government's assumption that Congress contemplated review by carriers of `trivial' monetary claims . . . but intended no review at all of substantial statutory and constitutional challenges to the Secretary's administration of

Part B of the Medicare program."  476 U.S. at 680 (footnote

omitted).  The Court found insufficient evidence to show that

Congress meant to take this "extreme position."  Id.

In subsequent cases involving Part B of the Medicare

program, we explained that "Erika and Michigan Academy define the

ends of a continuum."  American Ambulance Serv. v. Sullivan, 911

F.2d 901, 905 (3d Cir. 1990); see also Medical Fund-Phila.

Geriatric Ctr. v. Heckler, 804 F.2d 33, 38 (3d Cir. 1986).  We

elaborated:

> At one end are disputes over amount computations at
> issue in a particular case.  At the other are disputes
> arising from the Secretary's rules, regulations and
> instructions which are applied by the Hearing Officer.
> A Hearing Officer is not at liberty to disregard these
> rules. . . . "[M]atters which Congress did not delegate
> to private carriers, such as challenges to the validity
> of the Secretary's instructions and regulations, are
> cognizable in courts of law."  Michigan Academy, 476
> U.S. at 680, 106 S. Ct. at 2140-41 (emphasis in
> original).

American Ambulance Serv., 911 F.2d at 905.

Contrary to SFMC's argument, we do not believe that

Michigan Academy supports its reliance on general federal-

question jurisdiction in this case.  Michigan Academy concerned

the availability of general federal-question jurisdiction to

review the validity of a Part B regulation.  Under Part B, a

carrier cannot review the legality of such a regulation (see

Michigan Academy, 476 U.S. at 675-76, 680) and, as Erika held, a

carrier's determination of the amount of a Part B payment is not

reviewable.  Thus, if general federal-question jurisdiction had

not been available in Michigan Academy, the plaintiffs in that case would have had no avenue for challenging the validity of the regulation under which their payments were calculated.

By contrast, the Medicare Act provides avenues by which a provider seeking Part A payments may contest both the amount of its payments and the methods by which those payments are calculated.  If the provider seeks review of a reimbursement determination and does not wish to challenge a provision of the Act or regulations, it may, upon compliance with the jurisdictional requirements imposed by statute, take an appeal to the PRRB (see 42 U.S.C. § 1395oo(f)(1)).  Alternatively, if the provider wishes to challenge a provision of the Act or a regulation, it may seek a determination by the PRRB that the Board lacks the authority to decide the question (see 42 U.S.C. § 1395oo(f)(1)) and then obtain judicial review.  See Good Samaritan Hosp. v. Shalala, 113 S. Ct. 2151, 2156 (1993); Bethesda Hosp. Ass'n v. Bowen, 485 U.S. 399, 401-02 (1988).

Since a provider seeking Part A payments has these avenues of review available under the Medicare Act, the presumption that Congress did not intend to foreclose judicial review, which was central to the decision in Michigan Academy, is inapplicable.  And in the absence of that presumption, we read 42 U.S.C. § 405(h), as incorporated into the Medicare Act and as interpreted in Salfi and Ringer, to mean that SFMC may not assert its claim under 28 U.S.C. § 1331.

In *Westchester Management Corp. v. United States HHS*, 948 F.2d 279 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1936 (1992), the Sixth Circuit considered a case quite similar to the one before us.  Noting that 42 U.S.C. § 1395oo(f)(1) provided "an avenue of judicial review for the type of challenge that [the provider] assert[ed]," the court stated that "the Michigan Academy exception applies only when there is no other avenue of judicial review."  948 F.2d at 282.  The court continued:

> Congress has expressly provided for judicial review of the type of claim that Westchester Management asserts, when the claim exceeds the $10,000 amount-in-controversy requirement.  Congress created a special procedure by which a provider that, unlike Westchester Management, is entitled to a Board hearing may demand that the Board determine whether it has authority to pass on a relevant legal question, such as the validity of an instruction of the Secretary.  If it determines that it lacks authority, the provider may proceed directly to court for judicial review of its legal challenge.  See 42 U.S.C. § 1395oo(f)(1).  If we were to accept Westchester Management's construction of Michigan Academy -- that there is always jurisdiction under 28 U.S.C. §§ 1331 and 1346 for challenges to instructions, rules, and regulations, but not for amount determinations -- this special procedure, created by 42 U.S.C. § 1395oo(f)(1), would become superfluous.

> The better construction requires that Westchester Management pursue the exclusive jurisdictional grant within the Medicare Act.  Its claim that it has no avenue of judicial review is meritless; 42 U.S.C. § 1395oo(f)(1) provides an avenue of judicial review for the sort of challenge to the validity of the Secretary's instructions that it raises.  Westchester Management is, however, denied access to that avenue because it is unable to meet the amount-in-controversy requirement.  There is no contention that Congress lacks the power to limit jurisdiction by prescribing minimum amount-in-controversy requirements.

Id. at 282-83; see also Colonial Penn Ins. Co. v. Heckler, 721 F.2d 431, 436 (3d Cir. 1983); Frankford Hosp. v. Davis, 647 F. Supp. 1443, 1446-47 (E.D. Pa. 1986); Mount Sinai Medical Ctr. v. Sullivan, Medicare & Medicaid Guide (CCH) ¶ 39,103 (D.D.C. Nov. 30, 1990). We find this analysis persuasive.

We note, moreover, that administrative remedies are now available for providers who believe that their base period operating costs are too low. Beginning in 1990, a provider may request a new base period. See 42 U.S.C. §§ 1395ww(b)(4)(A)-(B) (Supp. 1993); 42 C.F.R. § 413.40(i). As previously noted (see pages 4-5, supra), a provider may also request a permanent base-period cost adjustment under 42 C.F.R. § 413.40(g). A denial of either of these requests may be appealed to the PRRB and is thereafter subject to judicial review under 42 U.S.C. § 1395oo(f)(1).

SFMC contends that these procedures are inadequate in its case. SFMC correctly notes that the granting of a new base period beginning in 1990 pursuant to 42 C.F.R. § 413.40(i) would not permit it to recover the bonus payments that it believes it should have received prior to that date. As for a permanent base-period cost adjustment, SFMC argues that the Secretary has only recently recognized the availability of such relief. Indeed, SFMC charges that the Secretary previously took the position that no such relief was available and that the Secretary's current interpretation of the relevant regulations is

simply a "convenient litigating position." The Secretary disputes these charges. But whether or not SFMC's charges are justified, we do not think they have a bearing on the availability of jurisdiction under 28 U.S.C. § 1331, for "Subject matter jurisdiction can never be created by estoppel." Rubin v. Buckman, 727 F.2d 71, 72 (3d Cir. 1984); see Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982).

SFMC also argues that, even now, while the Secretary acknowledges that a permanent base-period adjustment would apply in determining a provider's entitlement to TEFRA bonus payments in future years, the Secretary takes the position that such an adjustment would not apply in determining a provider's entitlement to bonus payments in the year in which permanent adjustment is granted. In other words, SFMC contends that the administrative procedure may cause a provider to lose a year of incentive payments.

This argument does not persuade us that such a provider must be permitted to sue to recover these bonus payments under 28 U.S.C. § 1331. If such a provider has a substantive entitlement to these bonus payments under the Medicare Act, it is by no means clear to us that the provider could not obtain those payments in an action under 42 U.S.C. § 1395oo(f)(1), irrespective of the regulations or the Secretary's interpretation of them. On the other hand, if such a provider has no such entitlement, then

obviously the Secretary's position causes the provider no harm. But in any event, even if the Secretary's position may by some means cause the provider to lose a year of bonus payments, that possibility is insufficient to persuade us that jurisdiction under 28 U.S.C. § 1331 must be recognized.

We have considered all of SFMC's remaining arguments, and we find them to lack merit. Accordingly, we will affirm the decision of the district court dismissing SFMC's complaint.