63 F.3d 497
 48 Soc.Sec.Rep.Ser. 686, Medicare & Medicaid Guide
P 43,505
Lois MARTIN, on behalf of herself and all others similarly
situated and Alan R. Kohlhaas, M.D., on behalf of
himself and all others similarly
situated, Plaintiffs-Appellants,
v.
Donna E. SHALALA, in her capacity as Secretary of the
Department of Health and Human Services and Associated
Insurance Companies Incorporated, doing business as Blue
Cross and Blue Shield of Indiana, Defendants-Appellees.
 No. 94-2844.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 13, 1995.
Decided July 31, 1995.
 
 Rodney V. Taylor, Christopher & Taylor, Indianapolis, IN, and Richard S. Pitts, Sydney L. Steele, and Scott R. Alexander (argued), Lowe, Gray, Steele & Hoffman, Indianapolis, IN, for plaintiffs-appellants.
 Sue Hendricks Bailey, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, IN, Alvin N. Jaffe (argued), Dept. of Health and Human Services, Region V, Office of the Gen. Counsel, Chicago, IL, Thomas G. Stayton, Ellen E. Boshkoff, Baker & Daniels, Indianapolis, IN, and Carol Clendening, Adminastar, Inc., Indianapolis, IN, for defendants-appellees.
 Before POSNER, Chief Judge, BAUER and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Plaintiffs-appellants Lois Martin, a Medicare beneficiary, and Dr. Alan Kohlhaas, a physician who receives assignments of Medicare payments for his services to Medicare beneficiaries, brought suit against the Secretary of Health and Human Services ("Secretary") and Associated Insurance Companies (d/b/a Blue Cross Blue Shield) ("Associated"), the insurance carrier designated to administer benefits under Medicare's Part B program in the State of Indiana. One of Associated's duties is to establish the "locality classification" of geographical areas of Indiana. The plaintiffs object to their classification as a "Category 03" non-urban locality. The district court dismissed the case for lack of subject matter jurisdiction. It concluded that, as a suit seeking an "amount determination," the plaintiffs were required to exhaust their administrative remedies before filing a court action. For the reasons that follow, we affirm that jurisdictional decision.
 
 
 2
 * BACKGROUND
 
 A. Statutory Framework
 
 3
 Title XVIII of the Social Security Act, 42 U.S.C. Sec. 1395 et seq., known as "Medicare," provides federal reimbursement for medical care to the aged and disabled and is administered by the Secretary. There are two components to the program. Part A provides hospital insurance benefits, and is funded out of social security taxes. Part B makes available supplementary medical insurance benefits for medical and other health services, including physicians' services, on a voluntary basis to eligible persons for a monthly premium.[1] As such, it is similar to private medical insurance programs but with substantial federal subsidies. See Schweiker v. McClure, 456 U.S. 188, 190, 102 S.Ct. 1665, 1667, 72 L.Ed.2d 1 (1982). Like private insurance policies, Part B excludes or limits payment on certain medical items and services; thus, actual reimbursement on health-related services may be less than what was requested.[2]
 
 
 4
 By statute the Secretary is authorized to contract with insurance carriers like Associated to perform administrative functions under the Medicare Act on behalf of the Secretary. The functions include administering the payment of qualified claims. 42 U.S.C. Sec. 1395u. The Congress has required carriers to assure that, "where payment ... for a service is on a charge basis, such a charge will be reasonable." Id. at Sec. 1395u(b)(3)(B). Under that mandate, therefore, carriers must determine whether benefits are due, and in what amount, and to whom payment should be made (i.e., the beneficiary or his or her assignee, the physician or other person furnishing the services).[3] When deciding upon a "reasonable charge" for a medical item or service, the carriers must give consideration to the physician's or supplier's "customary charge" and the locality's "prevailing charge." 42 U.S.C. Sec. 1395u(b)(3)(L); 42 C.F.R. Sec. 405.501 et seq. The amount established by the carrier as "reasonable" is considered a "screen" above which a charge is not reasonable and reimbursement will not be paid.
 
 B. Facts
 
 5
 In this case, Associated is the carrier responsible for administering the Medicare Part B program in Indiana. It established the "prevailing charges in the locality for similar services" under Sec. 1395u(b)(3) and the "locality" classifications under 42 C.F.R. Sec. 405.505.[4] Associated classified Dearborn County as a "Category 03" rural locality, with the lowest Medicare Part B reimbursement in Indiana. The complaint before us challenges this determination.
 
 
 6
 Ms. Martin is a resident of Dearborn County, Indiana, who received medical services covered by Part B of Medicare. Dr. Alan Kohlhaas, the other plaintiff, is a physician practicing medicine in Dearborn County, Indiana, and is on the staff of Dearborn County Hospital. He is an assignee of his patients who have received medical services from him that are covered by Medicare Part B. Ms. Martin and Dr. Kohlhaas filed a class action complaint against the Secretary and Associated to challenge "the methods used by which Part B Medicare benefit amounts for medical services provided in Dearborn County, Indiana, were and are determined under ... 'Medicare.' " R.10 at p 1.[5] According to the complaint, the plaintiffs were "deprived of their property rights to full payment of their respective Part B Medicare benefit amounts," in particular "because the methods used by the Carrier to determine 'the prevailing charges in the locality for similar services' for medical services rendered in Dearborn County ... were grossly negligent and wrongful." Id. They contend that Associated's classification of Dearborn County as a "Category 03" or rural locality results in unjustifiably lower benefit payments than those paid in nearby Cincinnati, which is classified as an urban area and which therefore is given higher reimbursements for the same medical services. Id. at pp 20, 23. The complaint alleges that the carrier's failure to determine properly the prevailing charges "caus[ed] plaintiffs and the class to be deprived of the full Part B Medicare benefit to which each is entitled." Id. at p 24.
 
 
 7
 The complaint also asserts that there is no administrative remedy available to these plaintiffs to challenge Associated's method for establishing the locality classification of Dearborn County. Id. at p 32. The plaintiffs seek a declaration that the prevailing charges in Dearborn County for its medical services are comparable to those in the Cincinnati area; they also seek an order that they be granted a fair hearing, damages for the losses caused by the wrongful methods used to determine the prevailing charges, as well as fees and expenses.
 
 C. District Court Opinion
 
 8
 The district court granted defendants' motion to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction.[6] Order of June 30, 1994, R.2 (elec. dkt.) at 18. When evaluating the plaintiffs' post-1986 claims,[7] the court noted that the Medicare Amendments effective January 1, 1987 gave courts the same jurisdiction over Part B that they had over Part A, and provided for an administrative hearing by the Secretary under 42 U.S.C. Sec. 405(b) and subsequent judicial review of the Secretary's final decision under Sec. 405(g).[8] Because the judicial review available for Part B was identical to that available for Part A of the Act, the court analyzed this case under the framework established by the Supreme Court in Heckler v. Ringer, 466 U.S. 602, 615, 104 S.Ct. 2013, 2021-22, 80 L.Ed.2d 622 (1984). In Ringer, the Court held that Sec. 405(h) barred federal question jurisdiction over a claim seeking payment of Part A benefits.[9] In Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), however, the Court found that federal question jurisdiction was available for certain actions in which the methodology used to determine benefits, rather than the amount of benefits, was challenged. Although Ms. Martin and Dr. Kohlhaas had characterized their complaint as a challenge to the methodology for establishing locality classification, the district court determined that the plaintiffs' claims were "inextricably intertwined" with the claim for Medicare benefits because they essentially sought higher benefits. As a result, the court concluded, judicial review was available only after exhaustion of administrative remedies and a final decision by the Secretary under 42 U.S.C. Sec. 405(g).
 
 
 9
 Turning to the requirements of Sec. 405(g), the court determined that the plaintiffs' allegation that they had presented their claims to Associated satisfied the nonwaivable requirement of Sec. 405(b) that they present their claims to the Secretary. However, continued the court, the plaintiffs failed to pursue adequately their administrative remedies by raising their claims in a reimbursement hearing. Reasoning that the plaintiffs' locality designation claim was part and parcel of their claim for benefits, the court also held that their claim could not be considered wholly collateral to the benefits claim. As a result of the plaintiffs' failure to exhaust their administrative remedies, the court concluded that it lacked subject matter jurisdiction over plaintiffs' claims.[10] The court dismissed the claims against both the Secretary and her carrier because, under Sec. 405(h), plaintiffs cannot proceed against a carrier when they cannot proceed against the Secretary. Bodimetric Health Servs., Inc. v. Aetna Life & Casualty, 903 F.2d 480, 487-88 (7th Cir.), cert. denied, 498 U.S. 1012, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990).
 
 II
 DISCUSSION
 A. Federal Question Jurisdiction
 1.
 
 10
 The plaintiffs submit that the district court did have federal question jurisdiction under 28 U.S.C. Sec. 1331. They urge us to rely on Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). Michigan Academy recognized that, although Congress foreclosed judicial review of Medicare amount determinations, "matters which Congress did not delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations, are cognizable in courts of law." Id. at 680, 106 S.Ct. at 2141. The plaintiffs claim that their challenge to the defendants' methods of classifying Dearborn County as a "Category 03" locality is not a challenge to the benefit amount determination, but rather is an intermediate claim that falls between the two clearly defined categories, challenges to the Secretary's instructions and regulations and challenges to amount determinations. The plaintiffs contend that their case involves a challenge to the defendants' benefit determination and classification procedures, and to the methods for administering the Medicare Part B program. As a result, they submit, the district court had federal question jurisdiction under 28 U.S.C. Sec. 1331.
 
 
 11
 The Secretary responds that plaintiffs are actually challenging the amount of reimbursement rather than the method by which it is calculated. In any case, the Secretary submits, that distinction between amount and method was abolished by the 1986 Amendments to Medicare, which allowed Part B claimants the opportunity for judicial review of the amount of reimbursement. She further asserts that the claims are not reviewable because plaintiffs have failed to exhaust their administrative remedies.
 
 2.
 
 12
 The district court dismissed the plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). We review that determination de novo. Bailor v. Salvation Army, 51 F.3d 678, 684 (7th Cir.1995); Family & Children's Ctr., Inc. v. School City, 13 F.3d 1052, 1057 (7th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994). Just as "the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff," Rueth v. EPA, 13 F.3d 227, 229 (7th Cir.1993) (quoting Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir.1993) (per curiam)), so must we. Because the plaintiffs are challenging the dismissal of only the post-1986 claims, we conduct our plenary review of those claims within the framework of the 1986 Amendments to the Medicare Act.[11] Congress amended the Act to afford Medicare Part B claimants the same administrative hearings, followed by judicial review after exhaustion of administrative remedies, that were available to Part A claimants.[12] The Amendments apply to medical items and services provided after January 1, 1987, and establish judicial review of both Parts A and B Medicare claims as provided under the review provisions of the Social Security Act. 42 U.S.C. Secs. 1395ff(b)(1)(C); National Kidney Patients Ass'n v. Sullivan, 958 F.2d 1127, 1131 (D.C.Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993); see also Health Equity Resources, Urbana, Inc. v. Sullivan, 927 F.2d 963, 965 (7th Cir.1991) (stating that Medicare statute provides for judicial review in accordance with Social Security Act). Jurisdiction for that judicial review rests in 42 U.S.C. Sec. 405(g) rather than in 28 U.S.C. Sec. 1331, the general federal question jurisdiction statute. See 42 U.S.C. Sec. 405(h); Bodimetric Health Servs., 903 F.2d at 483 (stating that Sec. 405(h) provides that Medicare claims must be brought exclusively under Sec. 405(g) for judicial review). Therefore, under the amended post-1986 Medicare statute, a Part B claimant like Ms. Martin or Dr. Kohlhaas may obtain judicial review of a Medicare payment challenge provided he or she meets the conditions of presenting the claim to the Secretary and exhausting the administrative remedies. Abbey v. Sullivan, 978 F.2d 37, 43 (2d Cir.1992).
 
 
 13
 The plaintiffs submit, however, that theirs is not a payment challenge, but rather a methods challenge. They rely upon the Supreme Court decision in Michigan Academy, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), a pre-Amendment ruling. At that time, the Medicare statute provided that judicial review was available for Part A claims under Sec. 405(g), and not Sec. 1331; for Part B claims, however, only a "fair hearing" before a hearing officer, but no further administrative or judicial review, was available. See Michigan Academy, 476 U.S. at 674-75, 106 S.Ct. at 2137-38. The Supreme Court, in United States v. Erika, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), had established that the Medicare statute, by not providing review of carrier Part B decisions, demonstrated the intent of the Congress to preclude federal jurisdiction over Part B payment determinations. Id. at 208, 102 S.Ct. at 1654 (holding there was no jurisdiction to review carrier's interpretation and application of statute's "reasonable charge" provisions). In Michigan Academy, however, the Court focused on a type of legal claim that could not be adjudicated in a hearing before the carrier. The Court determined from "persuasive evidence of legislative intent" that the Congress did not intend that there be no forum to adjudicate statutory and constitutional challenges to the Secretary's administration of Part B of the Medicare program.
 
 
 14
 The legislative history of both the statute establishing the Medicare program and the 1972 amendments thereto provides specific evidence of Congress' intent to foreclose review only of "amount determinations" ... remitted finally and exclusively to adjudication by private insurance carriers in a "fair hearing." By the same token, matters which Congress did not delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations, are cognizable in courts of law.
 
 
 15
 476 U.S. at 680, 106 S.Ct. at 2141 (emphasis added). The Court concluded that those Part B claims based on the "methodology" underlying Medicare, rather than on the "amount" of the reimbursement, were reviewable in federal court under the federal jurisdiction statute, 28 U.S.C. Sec. 1331. Id. at 680-82, 106 S.Ct. at 2140-42. See Bodimetric Health Servs., 903 F.2d at 485 (summarizing that, in Erika and Michigan Academy, the Court recognized the differences between Medicare claims challenging amount of benefits to be paid (not reviewable) and challenges to the regulatory scheme under which the amount of benefit is calculated (reviewable)).
 
 
 16
 The plaintiffs rely upon the above quotation from Michigan Academy as the basis for their jurisdiction claim. They find further support in the Court's distinction between "challenges mounted against the method by which such amounts are to be determined rather than the determinations themselves." 476 U.S. at 675, 106 S.Ct. at 2138. However, such reliance is misplaced when the claims being considered arose after 1986. The 1986 Amendments significantly restructured the Medicare statute and provide administrative review of all Part B claims for more than $500 and judicial review of those involving more than $1000. As a result of the 1986 Amendments, therefore, the Michigan Academy distinctions drawn between "amount of payment" and "validity of the statute and regulations" challenges are no longer meaningful or necessary. Indeed, all the courts of appeals that have reviewed the "amount/methodology" dichotomy created under Erika and Michigan Academy in light of the 1986 Amendments have rejected the distinction for post-1986 claims. See Michigan Ass'n of Indep. Clinical Labs. v. Shalala, 52 F.3d 1340, 1348 (6th Cir.1994) (stating that the distinction is a "non-issue" after Farkas ); Farkas v. Blue Cross & Blue Shield of Mich., 24 F.3d 853, 860 (6th Cir.1994) (declaring that amount/methodology distinction of Michigan Academy is not "good law"); Abbey, 978 F.2d at 42-43 (announcing that 1986 Amendments "relegat[ed] to irrelevancy the Erika/ Michigan Academy dichotomy"); National Kidney Patients Ass'n, 958 F.2d at 1132-33 (rejecting amounts/methodology distinction of Michigan Academy, stating "general rule that all part B claims, including methodology disputes that arise in disposition of specific, concrete claims, are judicially reviewable under the pattern established by Secs. 405(g) & (h)").[13] We agree that the Social Security Act's review provisions, incorporated into the Medicare Act in Sec. 1395ff, now provide the full authority for exercising jurisdiction over both Part A and Part B disputes.
 
 
 17
 We conclude, therefore, as did the district court, that there is no federal subject matter jurisdiction over this claim for Part B increased benefits pursuant to 28 U.S.C. Sec. 1331. The claim must be treated, after the 1986 Amendments, like a claim for Part A benefits. Heckler v. Ringer, 466 U.S. 602, 605, 104 S.Ct. 2013, 2016-17, 80 L.Ed.2d 622 (1984) establishes that judicial review of Part A claims is available "in the same manner as provided in 42 U.S.C. Sec. 405(g)." We therefore consider whether the claimants before us have met the requirements of Sec. 405(g).[14]
 
 B. Jurisdiction under the Medicare Act
 
 18
 Medicare claimants, under both Parts A and B, must ordinarily present their claims to the Secretary for review and exhaust their administrative remedies by obtaining a final decision of the Secretary before they can present a claim for judicial review. 42 U.S.C. Sec. 405(g); Bowen v. City of N.Y., 476 U.S. 467, 472, 106 S.Ct. 2022, 2025-26, 90 L.Ed.2d 462 (1986); Ringer, 466 U.S. at 617, 104 S.Ct. at 2022-23. That final agency ruling by the Secretary is "central to the requisite grant of subject-matter jurisdiction." Weinberger v. Salfi, 422 U.S. 749, 764, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). The district court found that the plaintiffs had satisfied the nonwaivable presentment prerequisite. Although we believe that decision is a generous one,[15] we shall accept, for the sake of argument, that the plaintiffs have overcome that jurisdictional hurdle and will focus on the second requirement under Sec. 405(g): that there be full administrative review culminating in a final decision of the Secretary. City of N.Y., 476 U.S. at 482-83, 106 S.Ct. at 2031-32. This requirement of exhaustion of administrative remedies is waivable under certain limited circumstances. Ringer, 466 U.S. at 618, 104 S.Ct. at 2024.
 
 
 19
 In this case, the plaintiffs have not specifically alleged that they have exhausted, or have attempted to proceed through, their administrative remedies. They have alleged only that "[a]ll conditions precedent have been performed or have occurred," R.10 at p 32, and that they were not granted the opportunity for a "fair hearing" and thus had no available or meaningful method to challenge Associated's locality classification. Compl. at pp 21, 22, 31, 32, 33. There is no administrative record here. See Michigan Ass'n of Indep. Clinical Labs., 52 F.3d at 1350 (holding, in case with no administrative record and no ALJ decision, that plaintiffs' letters were not sufficient to constitute exhaustion or a basis for waiver of exhaustion). Nevertheless, the exhaustion requirement may be waived "if it would be futile, that is, if there is no reasonable prospect that the applicant could obtain any relief by pursuing them," Health Equity Resources, 927 F.2d at 965. Our court has also held exhaustion unnecessary if the claim is "collateral to the claim for benefits and ... if requiring exhaustion would cause irreparable harm." Marcus v. Sullivan, 926 F.2d 604, 614 (7th Cir.1991). The Second Circuit, although noting that those factors may not be applied mechanically, has neatly listed the three criteria for waiver of the exhaustion rule: (1) The claim must be collateral to a demand for benefits; (2) exhaustion of the administrative process would be futile; and (3) the plaintiffs would suffer irreparable harm if required to move through the administrative procedure before obtaining relief. Abbey, 978 F.2d at 44 (citing City of N.Y. v. Heckler, 742 F.2d 729, 736 (2d Cir.1984), aff'd, Bowen v. City of N.Y., 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986)); see also Day v. Shalala, 23 F.3d 1052, 1059 (6th Cir.1994).
 
 
 20
 The plaintiffs submit that they are entitled to bypass the waivable requirement of exhaustion because their claims are "substantially collateral" to their claim for specific Medicare benefits. According to the plaintiffs, their complaint challenged the defendants' application and administration of Medicare provisions and their methods of classifying Dearborn County as a "Category 03" locality, but did not challenge the amounts of their benefits. The district court disagreed; it held that the plaintiffs' locality designation claim was part and parcel of their claims for benefits. We believe the district court's reasoning is sound. As our discussion above indicates, when a complaint asserts that the plaintiffs have not received "the full Part B Medicare benefits" and seeks damages for lost benefits, we cannot consider it as anything other than a claim for higher benefits. These plaintiffs, unlike those in Marcus and Day,[16] are basically seeking additional reimbursement that is in no way collateral to an amounts determination.
 
 
 21
 The plaintiffs also claim that it would be futile to attempt to exhaust their administrative remedies because no meaningful method to challenge Associated's methods of classification is available. Plaintiffs rely on Dr. Kohlhaas' letter from the Acting Region V Administrator of the Department of Health and Human Services, dated December 4, 1987, which stated that "no such formal appeals process exists whereby a physician can appeal the methodology a Medicare carrier used to establish its reasonable charge localities." R.17. On the basis of that statement, the plaintiffs posit that there is no administrative remedy available for them, and therefore that exhaustion would have been futile.
 
 
 22
 We believe that the letter, read in full, conveys a different message. The administrator answers Dr. Kohlhaas' questions on locality determinations; he then explains the established appeals process to follow for a review of a denied claim. The full sentence, from which the plaintiffs have excerpted the portion on which they rely, states:
 
 
 23
 While there is an established appeals process a physician may utilize when he disagrees with a Medicare carrier's decision on an assigned claim, no such formal appeals process exists whereby a physician can appeal the methodology a Medicare carrier used to establish its reasonable charge localities.
 
 
 24
 R.17. Thus the above quoted statement, in context, indicates that there is no process for obtaining the sort of declaratory relief Dr. Kohlhaas might prefer, but that a claimant could ask the carrier that handled the disputed claim to review the locality designation within the context of that claim. See Michigan Ass'n of Indep. Clinical Labs., 52 F.3d at 1350 (determining that plaintiffs' five-year letter-writing crusade did not qualify as request for review determination or hearing). Nor have these plaintiffs presented a legal basis on which to claim that the hearing officer, administrative law judge, or appeals council do not have the competence to address the locality classification as one of the factors used to compute a reimbursement. In sum, we conclude that futility cannot be a basis, in this case, for waiving the exhaustion requirement.
 
 
 25
 Finally, the plaintiffs have not shown that they would be irreparably harmed if the exhaustion requirement were enforced. The district court properly recognized that the plaintiffs failed to demonstrate that "deferment of judicial review until exhaustion of administrative remedies would cause them injury that cannot be remedied by later payment of the benefits requested." R.2 at 15. There has been no showing of injury, hardship, or futility, and no justification for asserting that their claim is collateral to a claim for benefits. As a result, the requirement that administrative remedies be exhausted cannot be ignored. Because the plaintiffs failed to exhaust the Sec. 405(g) requirements, the district court properly dismissed their claims for lack of subject matter jurisdiction.
 
 Conclusion
 
 26
 We hold that the plaintiffs' only source of federal court jurisdiction is the Medicare Act, not the federal question statute 28 U.S.C. Sec. 1331. The plaintiffs have not exhausted their administrative remedies and have not shown that a waiver of that requirement is warranted. Thus the district court properly dismissed the plaintiffs' action for lack of subject matter jurisdiction. The judgment of the district court is affirmed.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 The premium amount is determined by the Secretary. 42 U.S.C. Sec. 1395r(a), (b). The Federal Supplementary Medical Insurance Trust Fund, made up of the premiums paid by these potential beneficiaries and by contributions from the federal government, pays the benefits under Part B for specified medical and health services, including doctors' bills. 42 U.S.C. Secs. 1395k(a)(1); 1395t; 1395x(s)(1)
 
 
 [2]
 The Act and its implementing regulations specify and define the services and items for which Part B reimbursement can be made and the conditions and limitations on those payments. See, e.g., 42 U.S.C. Secs. 1395k, 1395l, 1395x(s), 1395y
 
 
 [3]
 See 42 U.S.C. Secs. 1395u(a)(1)(A) & (B); 42 C.F.R. Sec. 405.501 et seq. Under the Medicare statute beneficiaries may assign their right to payment to the physician or other person furnishing the service. 42 U.S.C. Sec. 1395u(b)(3)(B)(ii)
 
 
 [4]
 The applicable regulation establishes the criteria for determination of a "locality" in 42 C.F.R. Sec. 405.505 (1991):
 "Locality" is the geographical area for which the carrier is to derive the prevailing charges for services. Usually, a locality will be a political or economic subdivision of a State. It should include a cross section of the population with respect to economic and other characteristics. Where people tend to gravitate toward certain population centers to obtain medical care or service, localities may be recognized on a basis constituting medical service areas (interstate or otherwise), comparable in concept to "trade areas." Localities may differ in population density, economic level, and other major factors affecting charges for services. Carriers therefore shall delineate "localities" on the basis of their knowledge of local conditions. However, distinctions between localities are not to be so finely made that a "locality" includes only a very limited geographic area whose population has distinctly similar income characteristics (e.g., a very rich or very poor neighborhood within a city).
 The regulation presently in effect includes minor clarifications added in 1992 that do not change the overall definition.
 
 
 [5]
 The complaint before this court is the amended complaint filed March 21, 1990. In this complaint plaintiffs sought relief only with respect to claims that were determined based on the Category 03 locality designation
 
 
 [6]
 Plaintiffs originally claimed jurisdiction under the declaratory judgment, federal question, and mandamus statutes, 28 U.S.C. Secs. 2201(a), 1331, and 1361. The district court found that it had no basis for jurisdiction under any of those provisions. Before this court the appellants assert their claim only to federal subject matter jurisdiction under Sec. 1331
 
 
 [7]
 The plaintiffs are not appealing the district court's dismissal of their claims arising before January 1, 1987. We therefore review only those portions of the district court decision pertinent to the post-1986 claims
 
 
 [8]
 42 U.S.C. Sec. 405(g) provides, in pertinent part:
 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, ... may obtain a review of such decision by a civil action ... brought in [a] district court of the United States[.]
 
 
 [9]
 42 U.S.C. Sec. 405(h) provides:
 The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such a hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.
 
 
 [10]
 The court also determined that mandamus jurisdiction does not lie in this case, because Sec. 405(g) clearly provided an alternative remedy for plaintiffs. This ruling was not challenged by plaintiffs
 
 
 [11]
 See Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99-509, Sec. 9341(b), 100 Stat. 1874, 2037-38 (1986) (codified at 42 U.S.C. Sec. 1395ff(b)(1) (West 1992 & Supp.1995))
 
 
 [12]
 The review procedures, established in 42 U.S.C. Secs. 405(b) & (g), are set forth in detail in the regulations at 42 C.F.R. Secs. 405.803-405.815. They allow a party to challenge a carrier's determination on that party's claim, within an established time frame. First, a party dissatisfied with a carrier's Part B determination may, within six months of the date of the notice, seek review of that initial determination with the carrier. If still dissatisfied after that review, and if the amount in controversy is $100 or more, the individual can (within the next six-month time frame) request a "fair hearing" before the carrier's hearing officer. At that point, further administrative review is possible, if the controversial amount is $500 or more, and if the appeal is made within sixty days of notice of the decision being appealed. The hearing officer's ruling can be heard first by an administrative law judge and, if necessary, by the Appeals Council. Finally, if the amount in controversy is $1000 or more, and after all administrative remedies have been exhausted, the individual may seek judicial review of the Secretary's final decision within sixty days of the notice date of that decision. See Isaacs v. Bowen, 865 F.2d 468 (2d Cir.1989) (providing a detailed description of the appeal process)
 
 
 [13]
 In National Kidney, the court noted that other circuit courts "have assumed the continued application of Michigan Academy to part B Medicare issues" without addressing the 1986 amendment. 958 F.2d at 1134. Included in that list was our decision Bodimetric Health Servs., 903 F.2d 480 (7th Cir.1990). That case involved pre-1986 Amendment claims. The other cases listed also either reviewed pre-1986 Amendment claims or turned on issues not pertinent to the Michigan Academy distinctions
 
 
 [14]
 See supra note 8 for text of Sec. 405(g)
 
 
 [15]
 Although the district court stated that the plaintiffs "satisfied the nonwaivable requirement of presenting their claims to the Secretary by alleging that claims for benefits were presented to Associated," we find no such allegation in the amended complaint and no record of a filing with Associated
 
 
 [16]
 In Marcus, the plaintiffs, claiming system-wide violations by the Secretary, brought a facial attack to an agency policy. Our court determined that the challenges were collateral claims because "our holding regarding the validity of that policy stands independent of the ultimate merits" of the benefit claims. 926 F.2d at 614. In Day, the plaintiffs' disability benefits had been denied or terminated because the state disability bureau had failed to comply with the Social Security Act and regulations. The plaintiffs did not seek benefits in the district court, but rather challenged the Secretary's failure to follow the applicable regulations. Therefore the Sixth Circuit determined that their claims were "collateral to the underlying question of their eligibility for disability benefits." 23 F.3d at 1059