United States Court of Appeals,

Eleventh Circuit.

No. 97-2229.

AMERICAN ACADEMY of DERMATOLOGY;  Florida Society of Dermatology;  Seniors Coalition, Inc., Plaintiffs-Appellants,

v.

DEPARTMENT of HEALTH & HUMAN SERVICES, through Donna Shalala, Secretary of the United States Department of Health and Human Services;  Health Care Financing Administration;  Bruce Vladeck, Administrator of Health Care Financing Administration;  Blue Cross/Blue Shield of Florida, Inc., Defendants-Appellees.

Aug. 7, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 96-1202-Civ-J-10), William T. Hodges, Judge.

Before BARKETT, Circuit Judge, HILL, Senior Circuit Judge, and HOWARD[*], Senior District Judge.

BARKETT, Circuit Judge:

Appellants, the American Academy of Dermatology, et al., appeal from the district court's order dismissing the instant action for lack of subject matter jurisdiction.  Appellants filed suit against the United States Department of Health and Human Services[1] alleging violations of Part B of the Medicare Act, 42 U.S.C. §§ 1395j-1395w-4.  On appeal, appellants argue that the district court erred in holding that it lacked subject matter jurisdiction over this action due to appellants' failure to present their claims to the United States Secretary of Health and Human Services and exhaust administrative remedies.  We AFFIRM.

I. BACKGROUND

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.,* commonly known as the Medicare Act, established programs that provide medical benefits to the elderly and disabled.  These programs are administered by the United States Secretary of Health and Human Services ("the

---

[*]Honorable Alex T. Howard, Jr., Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

[1]The suit also named as defendants the Health Care Financing Administration and its Administrator, Bruce Vladeck, as well as Blue Cross & Blue Shield of Florida, Inc.

Secretary"). The Medicare Act is divided into three parts. Part A provides insurance primarily for the costs of hospital and related post-hospital care and is funded by social security taxes. 42 U.S.C. §§ 1395c-1395i-4. Part B is a voluntary program that provides supplemental insurance to cover other health care costs, including physicians' services. 42 U.S.C. §§ 1395j-1395w-4. It is funded by monthly premiums paid by beneficiaries and contributions made by the government to the Federal Supplementary Medical Insurance Trust Fund. 42 U.S.C. § 1395t. Part C contains miscellaneous provisions and definitions. 42 U.S.C. §§ 1395x-1395ccc. This case concerns the coverage of physicians' services under Part B.

The Secretary is authorized by statute to contract with private insurance carriers to make determinations concerning the rates and amounts for payment of Part B claims. *See* 42 U.S.C. § 1395u. The Secretary has delegated to Blue Cross & Blue Shield of Florida, a private insurance carrier ("the Carrier"), the authority to approve and pay medically necessary and proper claims for benefits covered by Part B of the Medicare program in the State of Florida. On November 18, 1996, the Carrier issued a Local Medical Review Policy ("LMRP") setting specific limitations on Medicare coverage for the treatment of premalignant skin lesions known as actinic keratoses ("AK").

Appellant American Academy of Dermatology is a national professional medical society for physicians specializing in diseases of the skin. Appellant Florida Society of Dermatology is the principal organization of dermatologists in the State of Florida. Members of both associations participate in the Medicare program and accept assignment of their reimbursement claims from Medicare-covered patients. Additionally many of those members treat patients with AK. Appellant The Seniors Coalition, Inc., is a national nonprofit public advocacy group that seeks to promote and protect the economic well-being and quality of life of senior citizens. A significant number of its Florida members are Medicare beneficiaries who have AK.

Appellants filed suit seeking a temporary restraining order and preliminary and permanent injunctive relief to block the implementation and enforcement of the LMRP. Appellants alleged, *inter alia,* that the LMRP had been unlawfully promulgated, and that its standards conflict with the requirements of the Medicare Act and the Medicare Carriers Manual by denying coverage for the

medically necessary removal or destruction of asymptomatic AK.

The district court denied appellants' motion for a temporary restraining order. Following a hearing on appellants' motion for a preliminary injunction, the district court dismissed the suit for lack of subject matter jurisdiction. The court held that appellants must present their claims to the Secretary and exhaust their administrative remedies pursuant to 42 U.S.C. §§ 405(g) & 1395ff(b)(1) before the court may exercise subject matter jurisdiction.[2] It is this determination that we review, specifically, whether physicians and patients are required to present their claims to the Secretary and exhaust administrative remedies before the court may exercise subject matter jurisdiction to review an LMRP under Part B of the Medicare Act.

II. DISCUSSION

Judicial review of benefit determinations under the Medicare Act is authorized by 42 U.S.C. § 1395ff(b)(1),[3] which provides for judicial review only after the Secretary renders a final decision on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for claims arising under the Social Security Act.[4] Judicial review of Medicare Act claims is circumscribed by 42 U.S.C. § 405(h)[5], which provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for

---

[2]The district court's order dismissing appellants' claims for lack of subject matter jurisdiction is subject to *de novo* review. *See Woodruff v. United States Department of Labor,* 954 F.2d 634, 636 (11th Cir.1992).

[3]Until the 1986 amendments to the Medicare Act, judicial review of amount determinations was authorized only for Part A claims pursuant to 42 U.S.C. § 1395ff(b)(1)(C). In 1986, however, the statute was amended to provide for judicial review of challenges to the determination of "the amount of benefits under part A *or part B* of this subchapter (including a determination where such amount is determined to be zero)." *See* 42 U.S.C. § 1395ff(b)(1)(C) (1986) (emphasis added).

[4]Section 405(g) provides in relevant part that:

> [a]ny individual, after any final decision of [the Secretary] made after a hearing to which he was a party, ... may obtain a review of such decision by a civil action ... brought in [a] district court of the United States.... 42 U.S.C. § 405(g).

[5]Section 405(h), which has been incorporated from the Social Security Act into the Medicare Act by 42 U.S.C. § 1395ii, states that:

> [t]he findings and decision of [the Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of [the Secretary] shall be reviewed by any person, tribunal, or governmental

judicial review for all claims for benefits "arising under" the Medicare Act. *See Heckler v. Ringer,* 466 U.S. 602, 614-15, 104 S.Ct. 2013, 2020-21, 80 L.Ed.2d 622 (1984).

On its face, § 405(g) provides for judicial review only after a "final decision" by the Secretary. The Supreme Court has explained that this "final decision" requirement consists of two elements—(1) "presentment": a nonwaivable, jurisdictional prerequisite that a benefits claim must be presented to the Secretary and (2) "exhaustion": a waivable prerequisite that a claimant fully pursue all available administrative remedies before seeking judicial review.[6] *See Ringer,* 466 U.S. at 617, 104 S.Ct. at 2022; *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976).

In *Heckler v. Ringer,* 466 U.S. at 614-20, 627, 104 S.Ct. at 2020-24, 2027 the Supreme Court held that presentment and exhaustion under § 405(g) constituted a jurisdictional prerequisite to judicial review of Medicare Act claims that were "essentially" claims for benefits. The Court considered a challenge by potential Medicare beneficiaries to a decision by the Secretary that certain Medicare Part A claims regarding a procedure known as bilateral carotid body resection ("BCBR") would not be reimbursed under the Medicare Act. *See id.* at 607, 104 S.Ct. at 2017. Three claimants in the case had undergone BCBR surgery, but a fourth plaintiff, Ringer, had not yet undergone the surgery. *Id.* at 609-10, 104 S.Ct. at 2018-19. The complaint sought (1) declaratory relief that the new policy of the Secretary regarding BCBR surgery contravened the Medicare Act, (2) an injunction ordering the Secretary to instruct the Medicare intermediaries to pay BCBR claims, and (3) an injunction barring the Secretary from requiring claimants to pursue individual administrative appeals in order to obtain payment. *Id.* at 611, 104 S.Ct. at 2019.

The Court determined that the claims of the three plaintiffs who had already undergone the surgery were "inextricably intertwined" with what was in essence a claim for benefits under the

---

agency except as herein provided. No action against the United States, [the Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

[6]In this case, it is undisputed that appellants have not presented their claims to the Secretary or exhausted administrative remedies. Thus, the requirements of § 405(g) have not been met.

Medicare Act, *id.* at 624, 104 S.Ct. at 2026 and thus may be brought only in accordance with the requirements of § 405(g). Because those plaintiffs had failed to exhaust administrative remedies as required by § 405(g), the court held that their claims were premature. *Id.* at 618-19, 104 S.Ct. at 2023-24. As to Ringer's claim, the Court likewise characterized it "as essentially one requesting the payment of benefits for BCBR surgery, a claim cognizable only under § 405(g)." *Id.* at 620, 104 S.Ct. at 2024. Thus, Ringer was required to "pursue his claim under [§ 405(g) ] in the manner which Congress has provided."[7] *Id.* at 622, 104 S.Ct. at 2025. The Court held that because he had not given the Secretary "an opportunity to rule on a concrete claim for reimbursement," he had not complied with the nonwaivable presentment requirement of § 405(g). *Id.* at 622, 104 S.Ct. at 2025. The court so held even though Ringer, like appellants in the present case, had not yet undergone the surgery and hence did not yet have a reimbursable Part A claim to present to the Secretary.

We find that *Ringer* is dispositive of the instant case. The declaratory and injunctive relief sought in that case ordering the Secretary to instruct Medicare intermediaries to refrain from implementing a policy against reimbursing BCBR claims and to pay those claims is indistinguishable, as a practical matter, from the relief sought by the appellants in this case. As noted above, the appellants in this case, prior to the performance of the medical procedures in question, seek a temporary restraining order and preliminary and permanent injunctive relief enjoining the Secretary from refusing to reimburse claims for AK removals deemed uncovered under the LMRP. Thus, this case clearly involves claims for benefits under the Medicare Act of the kind that are only cognizable under § 405(g).[8] Accordingly, the requirements of presentment and

---

[7]The Court also held that Ringer and the other claimants could not circumvent the requirements of § 405(g) by bringing suit directly in federal court under the general federal-question jurisdiction provision, 28 U.S.C. § 1331, which authorizes jurisdiction over "all civil actions arising under the ... laws ... of the United States." *See Ringer,* 466 U.S. at 614-15, 104 S.Ct. at 2020-21. The Court noted that by its plain language, the jurisdictional limitation applicable to the Medicare Act, 42 U.S.C. § 405(h), forbids any action against the Secretary under § 1331 for any claim that "arises under" the Act, and provides that judicial review of such claims must conform to the terms of § 405(g). *See id.*

[8]In this case, as in *Ringer,* plaintiffs may not circumvent the requirements of § 405(g) by invoking the court's general federal-question jurisdiction pursuant to 28 U.S.C. § 1331. *See Ringer,* 466 U.S. at 614-16, 104 S.Ct. at 2021-22 (discussing 42 U.S.C. § 405(h)).

exhaustion must be met prior to the exercise of judicial review.

We have carefully considered but remain unpersuaded by appellants' argument that this case is controlled not by *Ringer* but rather by the Court's subsequent decision in *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). *Michigan Academy* involved a challenge by doctors to the validity of a federal regulation that authorized payment of Part B benefits in different amounts for similar physicians' services. *Id.* at 668, 106 S.Ct. at 2134. At the time the case was decided, the scheme of the Medicare Act completely precluded judicial review of Part B "amount determinations." *See United States v. Erika, Inc.,* 456 U.S. 201, 208, 102 S.Ct. 1650, 1654, 72 L.Ed.2d 12 (1982). However, the Court characterized the doctors' claim as a challenge to the "*method* by which ... amounts are determined," concluding that judicial review of their claim was not barred. *See id.* at 680 n. 11, 106 S.Ct. at 2140 n. 11 (emphasis in original). The Court explained that the Congressional preclusion of judicial review for Part B claims applied only to amount determinations,[9] and not to methodology or "matters which Congress did not delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations, [which] are cognizable in courts of law." *Id.* at 680, 106 S.Ct. at 2140. The Court also noted that the exhaustion requirement could not apply to respondents because "there is no hearing, and thus no administrative remedy, to exhaust." *Id.* at 679 n. 8, 106 S.Ct. at 2140 n. 8

Four months after *Michigan Academy* was decided, however, Congress amended the Medicare Act to authorize an administrative hearing and judicial review thereof with respect to Part B claims for benefits in the same manner as is provided in 42 U.S.C. § 405(g). *See* Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99-509, § 9341(a)(1), 100 Stat. 1874, 2037-38 (1986) (codified at 42 U.S.C. § 1395ff).[10] As appellants concede, Congress thereby extended the same

[9]The statutory preclusion of judicial review discussed by the Court was § 405(h). Based on analysis of legislative history, the Court held that this provision only restricted judicial review of Part B amount claims as opposed to methodology claims. *See Michigan Academy,* 476 U.S. at 679-80, 106 S.Ct. at 2150-51.

[10]The amendment provided for judicial review, after a final decision of the Secretary, in the same manner authorized by 42 U.S.C. § 405(g) of "the amount of benefits under part A *or part B* of th[e] subchapter (including a determination where such amount is determined to be zero)." *See* 42 U.S.C. § 1395ff(b)(1)(C) (1986) (emphasis added).

statutory framework for review of Part A benefits claims to Part B claims for benefits. Thus, the statutory language that was held to require presentment and exhaustion in *Ringer* applies to Part B claims as well as Part A claims. Every circuit court that has considered the effect of the 1986 amendments on the issue has held that the jurisdictional prerequisites applicable to Part A claims, as recognized in *Ringer,* now apply under Part B.[11] *See, e.g., Martin v. Shalala,* 63 F.3d 497, 503 (7th Cir.1995); *Farkas v. Blue Cross & Blue Shield of Michigan,* 24 F.3d 853, 860-61 (6th Cir.1994); *Abbey v. Sullivan,* 978 F.2d 37, 42-43 (2d Cir.1992); *National Kidney Patients Ass'n v. Sullivan,* 958 F.2d 1127, 1132 (D.C.Cir.1992), *cert. denied,* 506 U.S. 1049, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993).

We are likewise persuaded that as a result of the 1986 amendments, the amount/ methodology distinction established in *Michigan Academy* is no longer viable. *See, e.g., Martin,* 63 F.3d at 503; *Farkas,* 24 F.3d at 860; *Abbey,* 978 F.2d at 42-43; *National Kidney,* 958 F.2d at 1132. The continuing viability of this distinction would be untenable for two reasons. First, "[t]his would in effect be a holding that *Michigan Academy* overrules [*Ringer* and] the entire line of Supreme Court cases that has [required exhaustion and] denied direct federal-question jurisdiction to claims under Part A." *Farkas,* 24 F.3d at 860. The Court in *Ringer* explicitly rejected the argument that plaintiffs may circumvent presentment and exhaustion and gain direct access to federal court "simply because a claim somehow can be construed as "procedural' [in nature]...." *Ringer,* 466 U.S. at 614, 104 S.Ct. at 2020. We are unwilling to assume that *Michigan Academy* overruled *Ringer sub silentio,* as it certainly did not openly purport to do so. *National Kidney,* 958 F.2d at 1132. Second, the *Michigan Academy* distinction, if it were still held to be applicable, would conflict with cases decided under the Social Security Act, which, like *Ringer,* held that presentment and exhaustion are required under § 405(g) even for claims challenging procedure, policy, or statutory validity. *See National Kidney,* 958 F.2d at 1130-33 (referring to line of cases from Social

---

[11]Appellants cite *McCuin v. Secretary of Health and Human Services,* 817 F.2d 161, 164-66 (1st cir.1987), as contrary authority. However, that case is distinguishable because the court did not address or even mention the 1986 amendments to the Medicare Act which form the basis for the appellate decisions to the effect that presentment and exhaustion are required as to Part B claims.

Security Act context including *Eldridge,* 424 U.S. at 328-30, p6 S.Ct. at 899-900 and *Weinberger v. Salfi,* 422 U.S. 749, 756-64, 95 S.Ct. 2457, 2462-66, 45 L.Ed.2d 522 (1975)). This is significant because the Social Security Act provided the template for the judicial review provisions that are now applicable to both Parts A and B. *National Kidney,* 958 F.2d at 1132-33. As one court has explained, "the special treatment of [P]art B [claims], based on the pre-October 1986 statutory differences, cannot survive the elimination of those differences." *National Kidney,* 958 F.2d at 1132. Accordingly, we conclude that this case is controlled by *Ringer,* not *Michigan Academy.*[12]

Finally, we reject appellants' contention that, as in *Michigan Academy,* we should not require exhaustion of administrative remedies in this case because their claims would be effectively unreviewable if exhaustion is required. Appellants note that there is a "strong presumption that Congress intends judicial review of administrative action," *see Michigan Academy* 476 U.S. at 670, 106 S.Ct. at 2135 suggesting that this presumption weighs heavily against requiring exhaustion in the instant case. However, after the 1986 amendments it is clear from the plain language of § 1395ff(b)(1)(C) and § 405(g) that appellants would be able to seek judicial review of any denial of Part B benefits, if there is one, after a final decision by the Secretary. It is quite possible that their claims might not be denied when they are eventually presented to the Secretary. Moreover, if their claims are denied, judicial review of the LMRP would then be available, notwithstanding appellants' fears to the contrary, just as courts have reviewed nonbinding manual provisions and transmittal letters. *See, e.g., Shalala v. Guernsey Memorial Hospital,* 514 U.S. 87, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995) (manual provision that was nonbinding on PRRB, the Part A hearing equivalent of an ALJ regarding "cost" matters, was upheld as valid interpretation of the regulation); *Charter*

---

[12]Even if *Michigan Academy* were still controlling as to Part B claims after the 1986 amendments, its rationale would not be applicable to this case. Under the terms set forth in *Michigan Academy,* a claim may be designated as a challenge to methodology if it falls within the category of "matters which Congress did not delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations...." 476 U.S. at 680, 106 S.Ct. at 2140. In this case, it is clear that determinations as to whether removal of a particular type of AK is reimbursable were delegated to private carriers in the first instance and do not involve a challenge to the validity of the Secretary's regulations or instructions. Thus, we find that the claims in this case are not "methodology" challenges within the definition set forth in *Michigan Academy.*

*Peachford Hospital, Inc. v. Bowen,* 803 F.2d 1541, 1546-47 (11th Cir.1986) (non-binding manual provision overturned because it contravened Medicare statute and regulations); *see also Ringer,* 466 U.S. at 618-19, 104 S.Ct. at 2023-24 (holding that respondents must exhaust administrative remedies before challenging informal administrative instructions in district court); *National Kidney,* 958 F.2d at 1128-29, 1134 (suggesting that review of informal policy contained in transmittal letter would be available under the Medicare Act after administrative remedies were exhausted). We agree with the D.C. Circuit, which has explained that requiring exhaustion and presentment for Part B claims under the 1986 amendments "does not leave methodology disputes in the hands of carriers; it simply means that they are fed through the administrative-judicial system as parts of disputes over actual amounts." *National Kidney,* 958 F.2d at 1133-34.

Likewise, we cannot conclude that the amount-in-controversy provision will effectively preclude judicial review.[13] Although it was the intent of Congress in this provision to prevent minor claims from clogging the courts, judicial review remains available for claims that are sufficiently significant to satisfy Congress's criteria. Additionally, physicians who accept assignment of claims can combine the claims of numerous beneficiaries to meet the amount-in-controversy requirement.

For the foregoing reasons, the district court's order dismissing the instant action for lack of subject matter jurisdiction is AFFIRMED.

---

[13]A hearing before an ALJ is provided for Part B claims where the amount at stake is at least $500; judicial review thereof is available where the dispute involves $1,000 or more. 42 U.S.C. § 1395ff(b)(2)(B).