**NMC HOMECARE, INC., Plaintiff,**

v.

**Donna E. SHALALA, et al, Defendants.**

**Civil Action No. 3:cv–95–1922.**

United States District Court,
M.D. Pennsylvania.

July 18, 1997.

Ronald L. Castle, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Plaintiff.

Sanjay M. Bhambhani, Dept. of Justice, Washignton, DC, for Defendants.

### CORRECTING MEMORANDUM AND ORDER [1]

CONABOY, District Judge.

Presently before the Court is the Report and Recommendation of Magistrate Judge Thomas M. Blewitt. (Doc. 35). The Magistrate Judge recommends that the Defendant's Motion to Dismiss for lack of subject matter jurisdiction (Doc. 8) be granted and that the Plaintiff's complaint be dismissed for lack of subject matter jurisdiction. As the

---

1. The Court rendered·its decision by Order of Court dated June 18, 1997. (Doc. 48). While the substance and merit of that opinion remains the same, this correcting memorandum and order is being entered, citation and case reference errors having been corrected.

Plaintiff has filed objections to the Magistrate Judge's recommended disposition, we shall review the matter *de novo.* *See Cipollone v. Liggett Group, Inc.,* 822 F.2d 335, 340, (3d Cir.) *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987); *Henderson v. Carlson,* 812 F.2d 874, 878 (3d Cir.1987), *cert. denied,* 484 U.S. 837, 108 S.Ct. 120, 98 L.Ed.2d 79 (3d Cir.1987). After a thorough reexamination of the record and carefully reviewing the matter *de novo,* we shall adopt the Magistrate Judge's Report and Recommendation (Doc. 35), grant the Defendant's Motion to Dismiss for lack of subject matter jurisdiction and shall dismiss the Plaintiff's complaint. We shall also deem the Plaintiff's pending motion for summary judgment (Doc. 17) moot.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, NMC Homecare, Inc. (hereinafter "NMC Homecare"), initiated this complaint pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.,* and the Medicare Act, 42 U.S.C. §§ 1395k(a)(2)(B) and (hh). NMC "seeks to declare invalid as a matter of law a rule implemented by the Secretary, through her agent the Health Care Finance Administration ('HCFA'), in and after 1993 **with respect to reimbursements under the Medicare Act** for certain medical services known as intradialytic parenteral nutrition therapy (hereinafter 'IDPN')." (Doc. 1 pp. 1–2 ¶ 2) (emphasis added). In addition, NMC Homecare seeks to enjoin the Secretary from applying these rules.

While NMC Homecare is seeking to establish federal jurisdiction within this Court pursuant to several federal statutes, the defendant argues that this Court is without jurisdiction in this matter, as "reliance upon the federal question statute for subject matter jurisdiction over claims arising under the Medicare Act ... is foreclosed by 42 U.S.C. § 405(h)." (Doc. 9, p. 11).

## A. STATUTORY HISTORY GERMANE TO THIS ACTION

The Medicare Program, established in 1965 by Title XVIII of the Social Security Act, is under the control of the Department of Health and Human Services and is administered by the Health Care Financing Administration. The Medicare Program consists of two (2) Parts; part A and part B. 42 U.S.C. § 1395 *et seq.* "Part A provides hospital insurance benefits and is funded by Social Security Taxes. Part B provides optional supplemental insurance benefits covering physicians services, durable medical equipment, and other medical and health services to eligible individuals for a monthly premium." (Doc. 35, p. 2) (internal quotations and citations omitted). The Health Care Financing Administration designates certain carriers who act on its behalf in determining and making Medicare payments for Part A or Part B benefits and performing other related functions. (*Id., citing* 42 U.S.C. § 1395u). NMC Homecare is such a provider, and claims that the Health Care Finance Administration has failed to reimburse it for Part B medical services. It is the "assignee of more than 12,000 claims of Medicare beneficiaries relating to intradialytic parenteral nutrition therapy treatment and services that were submitted for reimbursement after 1993 but have been denied by the Health Care Finance Administration." (Doc. 1, p. 5 ¶ 17).

Up to this point in the factual and procedural background, all seems,fairly simple. The difficulty arises-and the parties disagree-at the juncture of how Part A and Part B claims receive judicial review from the Secretary's determination.

### 1. Judicial Review of Medicare Claims Prior to the 1986 Amendments

Prior to 1986, the year in which the Medicare Act was substantially amended, Part A claims were afforded both administrative and judicial review the same way other claims were brought under Title II of the Social Security Act:

(1) Any individual dissatisfied with any determination under subsection (a) of this section as to—

(C) the amount of benefits under Part A ... of this subchapter (including a determination where such amount is determined to be zero) ... shall be entitled to a hear-

ing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such a hearing as is provided in section 405(g) of this title. *Abbey v. Sullivan,* 978 F.2d 37, 42 (2d Cir. 1992) (citing 42 U.S.C. § 1395ff(b) (1982) (amended effective January 1, 1987)).

A review of 42 U.S.C. §§ 405(b) and 405(g) reveals that federal judicial review could only be entertained once the administrative review of the Secretary's final decision has occurred. "[B]y channeling Part A claims to the appellate mill established under Title II of the Social Security Act, Congress foreclosed judicial review of Part A claims pursuant to federal question jurisdiction." *Id. Accord, Weinberger v. Salfi,* 422 U.S. 749, 763, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975); *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976).

However, prior to the 1986 Amendments, judicial review for Part B claimants was substantially different and curtailed. Part B claimants first would make their claim to the carrier, who would then make a determination and notify the claimant of its determination. If the Part B claimant was dissatisfied with the result, he could request a review determination by a different carrier. 42 C.F.R. §§ 405.807, 405.810 (1996). If the claimant was still dissatisfied and the claim was in excess of a certain amount, the claimant could go one step further, seeking further review by way of a "fair hearing" in front of a carrier designated hearing officer. 42 C.F.R. § 405.820 (1996). But this was the end of review for Part B claimants. Any further administrative or judicial review was foreclosed by federal statute. *Abbey,* 978 F.2d at 42; *United States v. Erika, Inc.,* 456 U.S. 201, 206–07, 102 S.Ct. 1650, 1653–54, 72 L.Ed.2d 12 (1982). This more importantly meant that any matters which a carrier could not decide such as " 'challenges to the validity of the Secretary's instructions and regulations'[were] not insulated from review under the Medicare Act." *St. Francis Medical Center v. Shalala,* 32 F.3d 805, 811 (3d Cir.1994), *cert. denied,* 514 U.S. 1016, 115 S.Ct. 1357, 131 L.Ed.2d 215 (1995) (*quoting Bowen v. Michigan Academy of Family Physicians,*

476 U.S. 667, 668, 106 S.Ct. 2133, 2140, 90 L.Ed.2d 623 (1986)). However, judicial review must follow a final decision by the Secretary.

## 2. Judicial Review of Medicare Claims After the 1986 Amendments

In 1986, the Medicare Act was amended, and these amendments became effective on January 1, 1987. In essence, the 1986 amendments extended to Part B claimants' judicial review which is similar to Part A claimants' judicial review:

> The determination of whether an individual is entitled to benefits under Part A or Part B of this subchapter, and the determination of the amount of benefits under Part A or Part B of this subchapter, and any other determination with respect to a claim for benefits under Part A of this subchapter or a claim for benefits with respect to home health services under Part B of this subchapter shall be made by the Secretary in accordance with regulations prescribed by him.

42 U.S.C. § 1395ff(a) (emphasis added).

If dissatisfied with the Secretary's determination, the claimant could then seek further review pursuant to § 405(b) of the Social Security Act and judicial review of the Secretary's final decision pursuant to § 405(g) of the Social Security Act. *See* 42 U.S.C. § 1395ff(b)(1). Section 405(g) states in relevant part: "Any individual, after final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain a review of such decision by a civil action...." Even more importantly, § 405(h) states:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. **No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to**

recover *on ANY claim arising under this subchapter.*

(emphasis added).

Thus, "[p]art B claims are now reviewed in the same manner as Part A claims so that the Social Security Act provides the exclusive authority for exercising jurisdiction over Part B disputes." *Abbey,* 978 F.2d at 43 (*quoting Heckler v. Ringer,* 466 U.S. 602, 605, 104 S.Ct. 2013, 2016, 80 L.Ed.2d 622 (1984)).

## B. NMC HOMECARE, INC.

As previously stated, NMC Homecare is the assignee of "more than 12,000 claims of Medicare beneficiaries relating to [certain] treatments and services that were submitted for reimbursement to the Health Care Finance Administration after 1993 but that have been denied by the Health Care Finance Administration...." (Doc. 2, p. 5 ¶ 17). NMC Homecare contends that, although it is bringing the action pursuant to, *inter alia,* the Medicare Act, it is not seeking outright reimbursement for the Part B services it rendered to certain beneficiaries. Rather, NMC Homecare claims that it is seeking a declaration from this Court declaring invalid "a rule implemented by the Secretary ... with respect to reimbursements under the Medicare Act for certain medical services...." NMC Homecare also wants to enjoin, both preliminarily and permanently, the Secretary from applying the new rule (Doc. 1, p. 2 ¶¶ 2,3). NMC Homecare furthermore contends this Court retains jurisdiction under 28 U.S.C. §§ 1331 and 2201–2202 and 5 U.S.C. §§ 702 and 704.

NMC Homecare claims that "[s]ince at least 1984, the [Health Care Financing Administration] has ruled that parenteral nutrition therapy [one of the types of the medical treatments provided by NMC Homecare] is covered by Medicare...." (Doc. 1, p. 6 ¶ 22). Intradialytic parenteral nutrition (hereinafter "IDPN") is also a variation of such therapy, and also is a treatment provided under NMC Homecare's assigned claims. NMC Homecare further claims that such treatment was reimbursable under the Act since 1984, (Doc. 1, p. 7 ¶ 26), and NMC Homecare has "relied upon [these] rules in determining: (i) whether and when to bill Medicare for IDPN services and (ii) whether and when to provide IDPN services to particular patients whose treating physicians have ordered IDPN." (Doc. 1, p. 8 ¶ 29).

In 1993, apparently in an effort to streamline the administration of and reimbursement for IDPN services, the Secretary suggested a change in the reimbursement policy for IDPN services. The Secretary's policies were published by intermediaries known as Durable Medical Equipment Regional Carriers (hereinafter "DMERCs"). The DMERCs began to publish these Medical Review Policies, which NMC Homecare contends were "not materially different from the similar policies published and maintained by [other] specialty carriers." (Doc. 1, p. 9 ¶¶ 30–31). Following these published rules, NMC Homecare continued to submit claims through 1993. However, NMC Homecare claims that the Health Care Financing Administration has "in fact imposed new standards for determining whether IDPN [services] [were] covered." (Doc. 1, p. 9 ¶ 32).

NMC Homecare alleges that "[the Health Care Financing Administration] began to require that each IDPN claim meet each of three bright-line, black-or-white prerequisites (the 'Threshold Criteria') and to deny without consideration or deliberation claims in which any of the Threshold Criteria did not appear." (Doc. 1, p. 10 ¶ 35).[2]

NMC Homecare also alleges that based upon these new criteria, which it also claims have not been published or promulgated, its approval rate for reimbursements dropped from 75% to 13%. (Doc. 1, p. 11 ¶¶ 40–1). However, in May of 1995, the DMERCs did propose the threshold criteria for comment by the medical community. Nonetheless, as of the time of the filing of this complaint,

---

**2.** The threshold criteria are: (1) prior to the initiation of the IDPN treatment, all other forms of feeding the patient have been administered and have failed; (2) instead of relying on a clinical observation the symptoms of malabsorption in order to initiate IDPN treatment, the patient must now have "invasive, expensive and burdensome" laboratory tests and examinations before IDPN treatment could be administered; and (3) that the IDPN treatment must be administered daily.

NMC Homecare states that the 1995 Regional Medical Policies "[have] not been adopted or promulgated in final form." (Doc. 1, p. 14 ¶ 53).

### 1. Lack of Administrative Exhaustion

At the heart of this matter lies the issue of administrative exhaustion. The parties disagree that NMC Homecare does not have to seek administrative review of its denial of reimbursements. NMC Homecare states in its complaint that "[i]n the absence of judicial relief, to obtain the reimbursement for IDPN that is required under [the Health Care Financing Administration]'s rules, NMC Homecare would have, at a minimum, to initiate and exhaust 'fair hearings' and then initiate further administrative review with respect to each IDPN claim that is denied." (Doc. 1, p. 15, ¶ 55). NMC Homecare contends that administrative review is futile because of: (1) the large number of reimbursement claims it has; (2) the fair hearing officers are not required to implement current policies; (3) because the hearing officers "in fact" treat the threshold criteria as policy; and (4) not only would pursuing internal review be unduly expensive and wasteful, but the costs entailed in pursuing and preserving its rights for review would be unrecoverable. (Doc. 1, p. 15, ¶¶ 56–7). Because of these possibilities, NMC Homecare contends that it will be "harmed irreparably unless preliminary and permanent injunctive relief is granted by the court." (Doc. 1, p. 15 ¶ 57).

NMC Homecare claims that the threshold criteria: (1) are contrary to Congressional intent as expressed in the Medicare Act; (2) are arbitrary, capricious and the Secretary's enforcement of said criteria violates the Administrative Procedure Act [3]; (3) were implemented and applied without notice to the public, although the Medicare Act requires the Secretary to make available to the public all materials related to the payment of benefits; and (4) prohibit NMC Homecare from receiving reimbursement for medical services when it contends that it should have been reimbursed under the Medicare Act.

---

**3.** 5 U.S.C. § 706(2)(A) & (C).

### *DISCUSSION*

### Standard of Review

█ It is important for all parties to acknowledge and accept the basic tenet that subject matter jurisdiction is a mandatory prerequisite to maintaining an action in federal court. *Rode v. United States,* 812 F.Supp. 45, 47 (M.D.Pa.1992); *Robinson v. Dalton,* 107 F.3d 1018, 1020 (3d Cir.1997). If the court does not have subject matter jurisdiction over the case, the district court *must* dismiss the action. *Id.* We also note that there exists a lower threshold to withstand a motion to dismiss for lack of subject matter jurisdiction as opposed to the higher standard for a Rule 12(b)(6) motion. While the former deals with the ability of the court to entertain the matter, the latter deals with the merits of the claim itself. *Saint Vincent Health Center v. Shalala,* 937 F.Supp. 496, 501 (W.D.Pa.1995). A plaintiff bears the burden of persuasion on a motion under Rule 12(b)(1). *Id.*

The Third Circuit recently described this Court's province in addressing subject matter jurisdiction:

> [W]hen there is a factual question about whether a court has jurisdiction, the trial court may examine facts outside the pleadings and thus 'the trial court may proceed as it never could under 12(b)(6) or Fed. R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case.' *Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 891 (3d Cir.1977).... [I]n such a circumstance, a trial court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.' *International Association of Machinists & Aerospace Workers v. Northwest Airlines, Inc.,* 673 F.2d 700, 711 (3d Cir.1982).

*Robinson,* 107 F.3d at 1021.

█ NMC Homecare contends that all allegations in its complaint must be taken as true, in a light most favorable to it. However, "under a Rule 12(b)(1) motion to dismiss, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of

disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Robinson,* 107 F.3d at 1021 (citing *Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 891 (3d Cir.1977)).

NMC Homecare brings this action pursuant to several federal statutes, namely, the Medicare Act, the Administrative Procedure Act and the Declaratory Judgment Act. The Magistrate Judge opines that we do not retain subject matter jurisdiction, as NMC Homecare's claims arise under the act. NMC Homecare objects to the Magistrate Judge's Report and Recommendation, and takes three (3) issues with the report. NMC Homecare contends that: (1) the magistrate judge erred when he found that the complaint puts at issue the failure of the Health Care Financing Administration to reimburse NMC Homecare for certain Part B medical services, when the complaint only seeks to enjoin the use of the administrative rules which it contends were made in secret; (2) the magistrate judge failed to follow the United States Supreme Court decision of *McNary v. Haitian Refugee Center, Inc.,*[4] as followed by *Blue Bell Medical, Inc. v. Pennsylvania Blue Shield*[5]; and (3) that the magistrate judge misread the United States Supreme Court decision of *Bowen v. City of New York*[6]. (Doc. 40, p. 2). We shall address each issue *seriatim.*

## A. THE BASIS OF THE COMPLAINT

NMC Homecare contends that its claims are neither grounded in nor arise under the Medicare Act. It contends that since the complaint does not arise under the Medicare Act, there is no need to seek administrative review of its claims. After ·a thoroughly exhaustive review of the complaint and NMC Homecare's claims, we disagree. Although it may appear upon a cursory inspection of the complaint that NMC Homecare complains of

violations of the implementation policies of the Secretary, a deeper inspection reveals that even, if this were true, NMC Homecare's complaints all arise from the fact that it did not receive reimbursement for claims which fall under, and are pertaining to, the Medicare Act.

The Third Circuit has addressed this jurisdictional issue in *St. Francis Medical Center v. Shalala,* 32 F.3d 805 (3d Cir.1994), *cert. denied,* 514 U.S. 1016, 115 S.Ct. 1357, 131 L.Ed.2d 215 (1995). The court of appeals observed that the issue requires a consideration of the Supreme Court precedent interpreted as the *"Salfi–Ringer*[7] line" and the *"Erika–Michigan Academy*[8] line," as set forth by the District of Columbia Circuit. *Id.* at 809. *See also National Kidney Patients Association v. Sullivan,* 958 F.2d 1127, 1130 (D.C.Cir.1992), *cert. denied,* 506 U.S. 1049, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993).

Under the *Salfi–Ringer* line, the "claim arising under" language of 42 U.S.C. § 405(h), is not exclusively limited to reimbursement claims, but also includes Medicare related claims that may arise under the APA or through a constitutional challenge. In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court addressed an action brought by a class of individuals who had been denied social security benefits under a provision of the Social Security Act. The claimants argued that the challenged provision was unconstitutional and relied on 28 U.S.C. § 1331 for jurisdiction. The claimants sought declaratory and injunctive relief in addition to damages. *Id.* at 755, 95 S.Ct. at 2462. Although a district court heard the case, the Supreme Court held that the district court was deprived of jurisdiction consistent with 42 U.S.C. § 405(h). *Id.* The Third Circuit reiterated the Supreme Court's reasoning, stating that:

---

**4.** 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991)

**5.** 775 F.Supp. 829 (M.D.Pa.1991)

**6.** 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986)

**7.** *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Heckler v. Ringer*

466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).

**8.** *U.S. v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982); *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).

It would, of course, be fruitless to contend that the appellees' claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint. But it is just as fruitless to argue that this action does not also arise under the Social Security Act. For not only is it social security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions.

*St. Francis*, 32 F.3d at 810 (*quoting Salfi* 422 U.S. at 760–61, 95 S.Ct. at 2464).

Similarly, in *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), the plaintiffs asserted jurisdiction pursuant to 28 U.S.C. § 1331. The Plaintiffs' claim sought Part A Medicare Benefits for the surgical procedure Bilateral Carotid Body Resection. Claimants contested an "administrative instruction" issued by the Secretary of Health and Human Services instructing "all fiscal intermediaries" not to pay claims for bilateral carotid body resection when the procedure was performed to relieve respiratory distress. *Ringer*, 466 U.S. at 607, 104 S.Ct. at 2017–18. The Plaintiffs sought direct district court review, arguing that the Secretary's instructions "violate Constitutional due process and numerous statutory provisions". *Id.* The Supreme Court characterized the Plaintiffs' contention by stating that "the relief that respondents seek to redress their supposed 'procedural objections' is the invalidation of the Secretary's current policy" and a "substantive declaration from her that the expenses of Bilateral Carotid Body Resection surgery are reimbursable under the Medicare Act." *Id.* at 614, 104 S.Ct. at 2021. The Supreme Court foreclosed jurisdiction pursuant to 28 U.S.C. § 1331, "and the court specifically rejected the distinction that the Court of Appeals had drawn between substantive and procedural claims." *Id.* at 614–15, 104 S.Ct. at 2021–22. As the Third Circuit stated, the Supreme Court wrote that "to be true to the language of the Statute, the inquiry in determining whether Section 405(h) bars federal-question jurisdiction must be whether the claim 'arises under' the Act, not whether it lends itself to a substantive rather than a procedural label." *St. Francis*, 32 F.3d at 812.

As the Third Circuit has interpreted *Ringer*, it was "inconsequential that the Plaintiffs sought only declaratory and injunctive relief and not an actual award of benefits as well, because [following] the declaration which respondents seek from the Secretary that B.C.B.R. surgery is a covered service—only essentially ministerial details will remain before respondents would receive reimbursement". *St. Francis*, 32 F.3d at 812.

To the contrary, in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), an association of physicians challenged a regulation under Part B of the Medicare Program, challenging it on constitutional and statutory grounds. The Supreme Court made a distinction between "amount determinations" where judicial review was precluded and a challenge to the "validity of a regulation" or the "method by which ... amounts are determined which permitted direct judicial review". *Id.* at 680, 106 S.Ct. at 2141. Thus, it was held that "the congressional preclusion of judicial review for Part B claims applied only to amount determinations, and not to matters which Congress did not delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations, [which] are cognizable in courts of law." *Farkas v. Blue Cross and Blue Shield of Michigan*, 24 F.3d 853, 858 (6th Cir.1994) (*citing Bowen*, 476 U.S. at 680, 106 S.Ct. at 2141).

As previously noted, at the time of the *Michigan Academy* decision, a pre–1986 amendment Supreme Court decision, judicial review was available for Part A claims under Section 405(g) to the exclusion of jurisdiction under 28 U.S.C. § 1331. *Martin v. Shalala*, 63 F.3d 497, 502 (7th Cir.1995). However, Part B claims were only entitled to a "fair hearing" by the carrier, but no other type of judicial or administrative review was available. 42 U.S.C. § 1395u(b)(3)(C); *Michigan Academy*, 476 U.S. at 675, 106 S.Ct. at 2138. In *U.S. v. Erika, Inc.* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), the Supreme Court had established "that the Medicare

Statute, by not providing review of carrier Part B decisions, demonstrated the intent of the Congress to preclude federal jurisdiction over Part B payment determinations." *Erika*, 456 U.S. at 208, 102 S.Ct. at 1654. Nevertheless, *Michigan Academy* distinguished Part B claims that were based upon the underlying "methodology" of Medicare and the "amount" of a reimbursement. Thus, the Court concluded that those claims which were "methodology" claims were entitled to federal court review pursuant to 28 U.S.C. § 1331. *Michigan Academy*, 476 U.S. at 680, 106 S.Ct. at 2141.

NMC Homecare relies on *Michigan Academy* to support its argument that they be given federal court jurisdiction. NMC Homecare objects specifically to the Magistrate Judge's conclusion that the Plaintiff's complaint seeks recovery on a Medicare claim. Rather, NMC Homecare argues that the complaint only seeks to enjoin the use of an administrative rule made by the Health Care Financing Administration which it claims is in violation of the Administrative Procedure Act. (Doc. 1). Thus, NMC Homecare relies upon the distinction made between a claim challenging the method by which payments are administered and a determination as to the amounts to be recovered.

■] NMC Homecare's reliance on *Michigan Academy* is misplaced after the implementation of the 1986 amendments. As previously recited, the 1986 amendments to the Medicare Statute provided administrative review for all Part B claims in excess of $500 and judicial review for those claims in excess of $1000. *Martin*, 63 F.3d at 503. *See also* 42 U.S.C. § 1395ff(a). Thus, subsequent to the 1986 amendments, "the *Michigan Academy* distinctions drawn between amount of payment and validity of the statute and regulations' challenges, are no longer meaningful or necessary". *Martin*, 63 F.3d at 503. Rather, under 42 U.S.C. § 405(g), a federal district court may review a claim arising under the Medicare Act only after the Secretary renders a "final decision." *Weinberger v. Salfi*, 422 U.S. 749, 762–64, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975). Section 1395ii of the Medicare Act incorporates 42 U.S.C. § 405(h) of the Social Security Act, in which it is explicitly stated that Section 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for claims "arising under the Act." *Manakee Professional Medical Transfer Service, Inc. v. Shalala*, 71 F.3d 574, 578 (6th Cir.1995) (*citing Salfi*, 422 U.S. at 762–64, 95 S.Ct. at 2465–66. *See also* 42 U.S.C. § 405(h)). The Supreme Court has interpreted the requirement of a "final decision" of the Secretary "to be central to the requisite grant of subject matter jurisdiction." *Salfi*, 422 U.S. at 763–64, 95 S.Ct. at 2465–66. Therefore, following the post 1986 Amendments to the Medicare Act, NMC Homecare's reliance on its purported "methodology" claim is unavailing. Thus, regardless of whether NMC Homecare's challenge is to the "method" by which it was denied reimbursements or the "determination" as to the amounts recovered, it is precluded from pursuing judicial review pursuant to 28 U.S.C. § 1331 and must follow administrative procedures consistent with 42 U.S.C. § 405(h).

It is not disputed that NMC Homecare did not exhaust the appropriate administrative remedies. Furthermore, there is no administrative record or final decision by an Administrative Law Judge with regard to its claim. Although NMC Homecare's complaint does not "explicitly" seek monetary reimbursements, NMC Homecare's contention that the Secretary's new rule violates the APA is "inextricably intertwined" with a claim for benefits. *Ringer*, 466 U.S. at 611, 104 S.Ct. at 2020. NMC Homecare explicitly states in its complaint that its claim arises under the Medicare Act in arguing that the Secretary's new rule violates the APA. Thus, through the implementation of the Secretary's rule, NMC Homecare has failed to be reimbursed for the Part B IDPN therapy.

NMC Homecare additionally contends that the Magistrate Judge's Report and Recommendation failed to follow the Supreme Court decision in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), as it was applied in *Blue Bell Medical, Inc. v. Pa. Blue Shield*, 775 F.Supp. 829 (M.D.Pa.1991). In *Blue Bell Medical*, the plaintiff challenged a unilateral

decision made by a carrier within Part B of the Medicare Program. They alleged that the decision of Pennsylvania Blue Shield to reduce its reimbursement for primary surgical dressing kits from $30.00 to $8.00 violated due process because it was contrary to the notice and comment consistent with 42 C.F.R. § 405.502(g). In addition, the plaintiffs also complained that their due process was violated because of the retroactive effect of the notice on the price for dressing kits that already had been supplied.

The plaintiffs sought direct judicial review arguing that the *Michigan Academy,* decision supported the exercise of jurisdiction by the Federal District Court. The court concluded that through the application of *Michigan Academy* and *McNary,* the Plaintiffs' claims did not "arise under" the Medicare Act and the Court therefore had jurisdiction under Section 1331. The district court based its application of *Michigan Academy* on the distinction drawn in that case between amount determination and methodology claims. The district court proceeded to state that the Supreme Court's analysis in *Michigan Academy* was "in accord with the recent decision in *McNary.*" *Blue Bell Medical,* 775 F.Supp. at 832–33.

In *McNary,* the Supreme Court also based its decision on *Michigan Academy.* The Supreme Court was confronted with a Constitutional challenge to a policy of the Immigration and Naturalization Service (hereinafter "INS") under the "Special Agricultural Workers" amnesty program. The issue in that case was whether § 210(e) of the Immigration and Nationality Act (hereinafter "INA"), codified at 8 U.S.C. § 1160(e), "precluded a federal district court from exercising general federal-question jurisdiction over an action alleging a pattern or practice of procedural due process violations by the [INS] in its administration of the [Special Agricultural Workers] program." *McNary,* 498 U.S. at 483, 111 S.Ct. at 892.

The Court held that 8 U.S.C. § 1160(e) did not preclude the district court from exercising federal-question jurisdiction over the respondents' Constitutional and statutory challenges to the INS procedures. *Id.* at 497, 111 S.Ct. at 898–99. The Supreme Court

distinguished *Heckler* and stated that "if not allowed to pursue their claims in the district court, respondents would not as a practical matter be able to obtain *meaningful judicial review* of their application denials or of their objections to INS procedures notwithstanding the review provisions of § 210(e) of the amended INA." *McNary,* 498 U.S. at 496, 111 S.Ct. at 898 (emphasis added).

The court proceeded to discuss *Michigan Academy* observing that "[i]nherent in an analysis in *Michigan Academy* was the concern that absent such a construction of the judicial review provisions of the Medicare statute, there would be no review at all of the statutory and constitutional challenges to the Secretary's administration of Part B of the Medicare Program." *McNary,* 498 U.S. at 498, 111 S.Ct. at 899.

The Third Circuit addressed *McNary* in the same context in which NMC Homecare attempts to apply it in the case at bar. However, in *Grant v. Shalala,* 989 F.2d 1332 (3d Cir.1993), the Third Circuit failed to apply *McNary.* In *Grant,* a class of plaintiffs attempted to bypass the administrative process and filed a complaint alleging that their denial of benefits was the result of the bias held against them by an Administrative Law Judge. The Court explained its rejection of *McNary* in stating that

> while the Court in *McNary* observed that the plaintiffs could not have obtained meaningful judicial review if their district court action was barred, in this case the Plaintiffs can obtain judicial review of the Secretary's decision regarding AU Powell's alleged bias, but that review must be based on the administrative record and the Secretary's findings of fact.

*Grant,* 989 F.2d at 1342–43.

As the Secretary correctly points out, the decision in *Grant* "forecloses NMC Homecare's effort to apply *McNary* to this case." (Doc. 45, p. 9). The claims of NMC Homecare are subject to federal district court review only after the appropriate administrative processes have been exhausted. By requiring the Plaintiff to exhaust the administrative remedies consistent with 42 U.S.C. § 405(g), NMC Homecare is not in

any way deprived of the opportunity for "meaningful judicial review." Thus, NMC may obtain meaningful judicial review of the Secretary's decision based upon the administrative record which will be developed through an appropriate administrative hearing before the Secretary. *Manakee Professional Medical Transfer Service, Inc. v. Shalala,* 71 F.3d 574, 578 (6th Cir.1995); *Martin v. Shalala,* 63 F.3d 497, 503 (7th Cir.1995). *Accord, Michigan Assoc. of Independent Clinical Laboratories v. Shalala,* 52 F.3d 1340, 1348 (6th Cir.1994); *Farkas v. Blue Cross and Blue Shield of Michigan,* 24 F.3d 853, 859 (6th Cir.1994); *Abbey v. Sullivan,* 978 F.2d 37, 43 (2d Cir.1992); *National Kidney Patients Association v. Sullivan,* 958 F.2d 1127, 1130 (D.C.Cir. 1992), *cert. denied,* 506 U.S. 1049, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993).

Similarly, NMC Homecare's reliance on *Blue Bell Medical* is also foreclosed, as " 'the *Michigan Academy* exception applies only when there is no other avenue of judicial review.' " *St. Francis Medical Center v. Shalala,* 32 F.3d 805, 812 (3d Cir.1994), *cert. denied,* 514 U.S. 1016, 115 S.Ct. 1357, 131 L.Ed.2d 215 (1995) (*quoting Westchester Management Corp. v. U.S. Dept. Of Health and Human Services* 948 F.2d 279, 282 (6th Cir.1991), *cert. denied,* 504 U.S. 909, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992)). As the court in *St. Francis* observed, "if general federal-question jurisdiction had not been available in *Michigan Academy,* the plaintiffs in that case would have had no avenue for challenging the validity of the regulation under which their payments were calculated." *Id.* at 812.

NMC Homecare's ability to have their claims reviewed by the district court is not foreclosed by requiring it to exhaust its administrative remedies. Thus, the *Michigan Academy* exception does not apply to NMC Homecare because "meaningful judicial review" is available subsequent to NMC Homecare's proper exhaustion of the administrative remedies.

**B. WAIVER OF EXHAUSTION REQUIREMENT**

NMC Homecare next complains that the Magistrate Judge misread the Supreme Court decision in *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). The Plaintiff argues that in accordance with *City of New York,* they are entitled to a waiver of the exhaustion requirement of 42 U.S.C. § 405(g). The Magistrate Judge held that the three requirements for waiver under *City of New York* were absent from the circumstances of the case. (Doc. 35, p. 12).

■ As the Magistrate Judge correctly points out, the factors that govern waiver of the exhaustion requirement are: (1) whether the claim is collateral to a demand for benefits; (2) whether exhaustion would be futile; (3) and whether Plaintiffs would suffer irreparable harm if required to exhaust their administrative remedies before obtaining relief. (Doc. 35, p. 9). *City of New York,* 476 U.S. at 482–86, 106 S.Ct. at 2031–33. *See also Pavano v. Shalala,* 95 F.3d 147, 150 (2d Cir.1996) (discussing the above mentioned exhaustion requirements).

■ In determining whether the exhaustion requirement should be excused, courts should be flexible. *Pavano,* 95 F.3d at 150; *Abbey,* 978 F.2d at 44. Such determinations "should also be guided by the policies underlying the exhaustion requirement." *Abbey* 978 F.2d at 44 (citing *City of New York,* 476 U.S. at 484, 106 S.Ct. at 2032)). "No one element is critical to the resolution of the [exhaustion] issue; rather, a more general approach, balancing the competing considerations to arrive at a just result, is in order." *Id.* (quoting *New York v. Sullivan,* 906 F.2d 910, 918 (2d Cir.1990).

■ The issue that NMC Homecare raises in its complaint is not collateral to a demand for benefits. It attempts to distinguish a claim for benefits with its challenge to the "hard evidence" policy implemented by the Secretary. However, we agree with the Secretary in that the remedy that NMC Homecare seeks, an "invalidation of these adverse determinations, is substantially similar, if not identical, to what it would obtain by pursuing its administrative remedies." (Doc. 45, p. 16). Moreover, NMC Homecare has already begun the administrative appeals process un-

der Part B of the Medicare Act in pursuing some of the 12,000 claims that it asserts have been denied by Medicare. (Doc. 11, p. 4). Thus, its challenge to the Secretary's rule is "inextricably intertwined" with its claim for benefits and not collateral to any potential reimbursement that it may be entitled if the ALJ were to find in its favor.

The administrative exhaustion requirement may also be waived if it would be futile in that "there is no reasonable prospect that the applicant could obtain any relief by pursuing" such administrative remedies. *Manakee*, 71 F.3d at 581 (*quoting Health Equity Resources, Urbana Inc. v. Sullivan*, 927 F.2d 963, 965 (7th Cir.1991)). NMC Homecare argues that in 1993 "[the] Health Care Finance Administration systematically denied, and still denies, IDPN reimbursement without regard to physician certifications based on the hard evidence requirements for the medical necessity criteria." (Doc. 18, p. 24). It complains that this complete reversal of the Horton Policy of 1988 was an internal directive to [the] Health Care Finance Administration and its DMERC agents. As such, NMC Homecare states that even if the AU and the Appeals Council may find in favor of NMC Homecare and grant certain claims for benefits, "it does not follow that ALJs and the Appeals Council may conclude that the Secretary has issued a rule in violation of the Administrative Procedures Act." (Doc. 18, p. 24).

We do not agree that it would be futile for the Plaintiff to exhaust their administrative remedies. NMC Homecare would not forfeit any right to pursue any of its 12,000 claims if required to first present their claims to the Secretary. Moreover, by requiring the appropriate presentment and exhaustion of administrative remedies as prescribed by 42 U.S.C. § 405(g), the district court would have an adequately developed factual record to review. Thus, consistent with the holding in *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), a challenge to a policy implemented by the Secretary still necessitates an exhaustion of administrative remedies. Likewise, NMC Homecare's challenge to the Secretary's change in policy as violative of the APA must be pursued according to 42 U.S.C. § 405(g).

We also agree with the Magistrate Judge that NMC Homecare has failed to show that it would suffer irreparable harm if exhaustion were required. (Doc. 35, p. 12). As the Magistrate Judge points out, "[w]hile the Plaintiff contends that 'exhaustion of the internal [Health Care Finance Administration] review process would be prohibitively expensive and unduly wasteful', the Plaintiff has failed to demonstrate that the alleged injury could not be remedied by the retroactive payment of benefits after the exhaustion of administrative remedies." *Id.*

In accordance with the Magistrate Judge, we do recognize that the exhaustion of 12,000 claims will be cumbersome. However, "the mere trouble and expense of defending the administrative proceeding is insufficient to warrant judicial review of the agency's action prior to the conclusion of the administrative proceeding." *Abbey*, 978 F.2d at 46. We also recognize the importance of exhaustion.

> Exhaustion is generally required as a matter of preventing interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975).

### CONCLUSION

Based upon the foregoing reasons, we have determined that NMC Homecare is not entitled to direct judicial review of its claims pursuant to 28 U.S.C. § 1331. Rather, consistent with 42 U.S.C. § 405(h), NMC Homecare is required to pursue the applicable levels of administrative review. Moreover, NMC Homecare has not provided this Court with sufficient evidence that it satisfies the requirements for waiver of the exhaustion requirement.

We therefore adopt the Magistrate Judge's Report and Recommendation and grant the Defendant's Motion to Dismiss for lack of

subject matter jurisdiction. We also deem the Plaintiff's Motion for Summary Judgement (Doc. 17) moot. Accordingly, the Plaintiffs Complaint is dismissed.

### ORDER

NOW, this 18th day of JULY, 1997, it is hereby ORDERED that:

1. The Magistrate Judge's Report and Recommendation (Doc. 35) is hereby ADOPTED.

2. By this ORDER, we have determined that NMC Homecare is not entitled to direct judicial review of its claims pursuant to 28 U.S.C. § 1331. Rather, consistent with 42 U.S.C. § 405(h), NMC Homecare is required to pursue the applicable levels of administrative review. In addition, NMC Homecare has not provided this Court with sufficient evidence that it satisfies the requirements for waiver of the exhaustion requirement.

3. The Defendant's Motion to Dismiss for lack of subject matter jurisdiction (Doc. 8) is hereby GRANTED.

4. The Plaintiffs Complaint (Doc. 1) is dismissed for LACK OF SUBJECT MATTER JURISDICTION.

5. The Plaintiffs Motion for Summary Judgment (Doc. 17) is deemed MOOT.

6. The CLERK of COURT is DIRECTED to MARK the DOCKET SHEET ACCORDINGLY and CLOSE the CASE FILE.